Melvin C. NIELSEN and Peter C. Kostantacos, Plaintiffs–Appellees,

v.

PIPER, JAFFRAY & HOPWOOD, INCORPORATED, Defendant–Appellant.

No. 95–1328.

United States Court of Appeals, Seventh Circuit.

Argued June 7, 1995.

Decided Sept. 19, 1995.

P. Terrence Buehler, Arthur T. Susman, Robert E. Williams (argued), Susman, Buehler & Watkins, Chicago, IL, for plaintiffs-appellees.

Theodore J. Low, Robert P. Bramnik (argued), William K. Myatt, Susan J. Magar, Altheimer & Gray, Chicago, IL, for defendant-appellant.

Before BAUER, COFFEY, and MANION, Circuit Judges.

MANION, Circuit Judge.

Plaintiff Peter C. Kostantacos (Kostantacos) brought this securities fraud class action suit against several defendants, including the appellant, Piper, Jaffray & Hopwood, Inc. (PJH). PJH filed a motion to stay litigation and compel Kostantacos' claim to arbitration pursuant to the parties' arbitration agree-

ment. The matter was referred to a magistrate judge who recommended that PJH's motion be granted. The district court agreed with this recommendation and entered an order compelling arbitration and staying the proceedings pending arbitration.

Kostantacos later filed a motion to reconsider and vacate the order compelling arbitration. In support, Kostantacos referred the court to a recent amendment to the National Association of Securities Dealers (NASD) Code of Arbitration Procedure which prohibits NASD members (such as PJH) from compelling arbitration of a claim which is part of a class action. Kostantacos claimed the amendment was in effect at the time of these proceedings, in which case PJH was prohibited from compelling arbitration. Kostantacos' motion was referred to the magistrate judge who agreed with Kostantacos and accordingly recommended an order vacating the initial order compelling arbitration. The district court, without opinion, adopted the magistrate judge's recommendation, vacated its initial orders, and reset the matter for trial. For the reasons set forth below, we agree with the magistrate judge's conclusions and therefore affirm the district court's decision to vacate its initial order directing arbitration of Kostantacos' claims.

## I.

In 1989 Kostantacos opened an account at PJH by executing one of PJH's standard "Fiduciary Cash Accounts Agreements." On October 17, 1991, Kostantacos[1] brought this class action suit for securities fraud against PJH, as one of the underwriters of the securities offering that formed the basis of his suit. An extended discussion of the facts forming the basis of Kostantacos' claims appears in *Nielsen v. Greenwood,* 849 F.Supp. 1233, 1235–40 (N.D.Ill.1994). We need not repeat them here, because we are concerned only with the narrower issue of arbitrability.

Paragraph 14 of the parties' agreement contained an arbitration clause in which Kostantacos agreed that

all controversies which may arise between Piper, Jaffray and Hopwood Incorporated and its agents, representatives or employees and me, concerning my transaction, account or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on, or subsequent to the date hereof, shall be determined by arbitration to the fullest extent provided by law. Such arbitration shall be in accordance with the rules then in effect, of the Arbitration Committee of the New York Stock Exchange or the National Association of Securities Dealers, Inc. as I may elect.

In addition, Paragraph 9 of the agreement contained a provision addressing the effect of intervening changes in statutes or regulations:

Whenever any statute shall be enacted, or any regulation made under any statute or by any exchange, board or market, which shall be applicable to and affect in any manner or be inconsistent with any of the provisions hereof, the provisions of this agreement so affected shall be deemed modified or superseded, as the case may be, by such statute or regulation and all other provisions of this agreement and the provisions as so modified shall in all respects continue and be in full force and effect.

On January 6, 1992, PJH filed a motion to compel arbitration pursuant to the arbitration agreement. PJH's motion was referred to a magistrate judge, who, on February 26, 1993, issued a report recommending the district court grant PJH's motion. *Nielsen v. Greenwood,* No. 91 C 6537, 1993 WL 144857 (N.D.Ill. Feb. 26, 1993). The magistrate judge found that Kostantacos had specifically agreed to submit his claims to arbitration and held that allowing Kostantacos to bring his suit as a class action would deprive PJH of the benefit of its contractual bargain con-

1. The original complaint named Melvin C. Nielsen as the plaintiff, but was subsequently amended to include Kostantacos as an additional named class representative. Nielsen dropped out as a class representative and pursued his individual claim against PJH in arbitration. He is not a party to this appeal. Therefore, we shall refer to Kostantacos as plaintiff throughout this opinion.

tained in the arbitration agreement. *Id.* *6. On August 30, 1993, the district court, following a de novo review, adopted the magistrate judge's reasoning and concluded that "[p]laintiffs contractually agreed to arbitrate any claims against PJH. Defendant should not now be deprived of the benefits of its bargain." *Nielsen v. Greenwood,* No. 91 C 6537, 1993 WL 339042 *2 (N.D.Ill. Aug. 30, 1993) (unpublished). On that basis, the district court entered an order granting PJH's motion to compel and ordering Kostantacos to arbitration. The district court subsequently entered an order denying Kostantacos' motion for class certification on September 20, 1993.

On June 30, 1994, Kostantacos filed a motion to reconsider the order compelling arbitration and renewed his motion for class certification. As the basis of his motion, Kostantacos claimed he had just learned that on January 8, 1992—two days after PJH filed its motion to compel arbitration—the NASD had proposed an amendment to Rule 12(d) of the NASD Code of Arbitration Procedure which prohibited NASD members from seeking to enforce any arbitration agreement against a customer who has initiated a class action against the broker-dealer/NASD member. NASD Manual—Rules of Fair Practice (CCH) ¶ 3712(d)(2), (3)

(1994).[2] The Securities and Exchange Commission (SEC) approved the proposed amendment on October 28, 1992, at which time it issued a release stating that

> the proposed rule change will ensure that class actions and that claims of individual class members are not eligible for arbitration at the NASD, regardless of any previously existing agreement to arbitrate. The only exceptions to this rule are in the circumstances where a class action certification has been denied, the class has been decertified, or the party that was a member of a class action has withdrawn or been excluded from the class.

Order Approving Proposed Rule Change Relating to the Exclusion of Class Actions from Arbitration Proceedings, Exchange Act Release No. 34–31371 Fed.Sec.L.Rep. (CCH) ¶ 2191 (Oct. 28, 1992). The SEC Release went on to state that "[t]his rule change is effective upon the date of Commission approval for all open arbitrations and for arbitration filings made on or after that date." *Id.* Kostantacos argued that because the rule had been adopted and was in effect before PJH's motion to compel arbitration had been decided, PJH was barred from seeking arbitration, in which case the order compelling arbitration should be vacated.

---

2. Subsections (2)–(3) of the proposed NASD rule provide:

> (d) Class Action Claims.
>
> . . . .
>
> (2) Any claim filed by a member or members of a putative or certified class action is also ineligible for arbitration at the Association if the claim is encompassed by a putative or certified class action filed in federal or state court, or is ordered by a court to an arbitral forum not sponsored by a self-regulatory organization for classwide arbitration. However, such claims shall be eligible for arbitration in accordance with Section 12(a) or pursuant to the parties' contractual agreement, if any, if a claimant demonstrates that it has elected not to participate in the putative or certified class action or, if applicable, has complied with any conditions for withdrawing from the class prescribed by the court.
>
> Disputes concerning whether a particular claim is encompassed by a putative or certified class action shall be referred by the Director of Arbitration to a panel of arbitrators in accordance with Section 13 or Section 19 of the Code, as applicable. Either party may elect instead to petition the court with jurisdiction over the putative or certified class action to resolve such disputes. Any such petition to the court must be filed within ten business days of receipt of notice that the Director of Arbitration is referring the dispute to a panel of arbitrators.
>
> (3) No member or associated person shall seek to enforce any agreement to arbitrate against a customer who has initiated in court a putative class action or is a member of a putative or certified class with respect to any claims encompassed by the class action unless and until: (A) the class certification is denied; (B) the class is decertified; (C) the customer is excluded from the class by the court; or (D) the customer elects not to participate in the putative or certified class action or, if applicable, has complied with any conditions for withdrawing from the class prescribed by the court.

The New York Stock Exchange (NYSE) passed an identical rule, NYSE 600(d), which was approved by the SEC on August 26, 1992. The parties here have limited their arguments to the NASD rule; hence our opinion will be limited to the application of that rule to the parties' agreement.

The magistrate judge agreed and recommended that Kostantacos' motion be granted and the order staying litigation and compelling arbitration be vacated. The magistrate judge found that the parties' arbitration clause expressly provided that arbitration was to be conducted in accordance with the applicable NASD rules. The magistrate judge found that amended rule 12(d) prohibited arbitration of claims of putative class members, and that the SEC intended the rule to apply retroactively. Thus, the magistrate judge concluded that the parties' arbitration agreement expressly incorporated amended Rule 12(d), which meant that PJH could not seek to compel arbitration. The district court accepted the magistrate judge's report, granted Kostantacos' motion for reconsideration, and vacated its previous order staying the litigation and compelling arbitration. *Nielsen v. Greenwood,* 873 F.Supp. 138, 146 (N.D.Ill.1995). PJH filed this appeal from the district court's order which was an interlocutory order over which we have appellate jurisdiction pursuant to 9 U.S.C. § 16(a)(1).

## II.

PJH argues that the parties' arbitration agreement clearly provides that all controversies between the parties are to be resolved by arbitration and that the recent amendments to rule 12(d) of the NASD Code of Arbitration do not change this result. But the terms of the agreement require that we carefully consider the amendments.

■ The Federal Arbitration Act (FAA) "provides that written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985) (quoting 9 U.S.C. § 2). The FAA requires courts to interpret arbitration agreements just like any other private agreements—according to their terms. *Mastrobuono v. Shearson Lehman Hutton, Inc.,* — U.S. —, —, 115 S.Ct. 1212, 1214, 131 L.Ed.2d 76 (1995). Thus, whether the parties have agreed to submit an issue to arbitration is a matter of contract interpretation. *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986). In making this review, courts must bear in mind that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.... [and] any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983). We also apply a cardinal principle of contract interpretation: we will read the document as a whole and give effect to all of its provisions and render them consistent with one another. *Mastrobuono,* — U.S. at —, 115 S.Ct. at 1219.

■ This case does not present us with difficult interpretive questions. In paragraph 14 of its agreement PJH specifically agreed that arbitration shall be conducted according to the rules in effect at the chosen arbitration forum. In paragraph 9 PJH expressly agreed that applicable statutes or regulations, including amendments adopted subsequent to the execution of the agreement, are specifically incorporated and trump inconsistent provisions of the agreement. Both the NASD and the NYSE, the two forums in which arbitration could be pursued under this agreement, adopted rules prohibiting arbitration of an individual's claim that has been filed as a putative or certified class action. The SEC, pursuant to its regulatory authority under 15 U.S.C. § 78s(b)–(c), approved the proposed NASD amendments. At that point, Paragraph 9 and the arbitration clause contained in Paragraph 14 specifically incorporated amended rule 12(d) of the NASD Code of Arbitration into the parties' agreement. Which is to say that the contract expressly prohibited PJH from compelling arbitration of this claim.

The only question is whether amended NASD rule 12(d) was in effect at the time relevant to this dispute. By statute, proposed rules from national securities exchanges and registered securities associations, such as NASD, are effective upon SEC approval. 15 U.S.C. § 78s(b)(2). When it

adopted the amended rule on October 28, 1992, the SEC stated that it would apply to "all open arbitrations and to all arbitration filings made on or after" the date of approval. The SEC did not define the term "open arbitration," but clearly this refers to arbitrations which were in progress before an arbitration panel at the time the SEC approved the rule. Although an arbitration was not yet in progress here, the phrase "arbitration filings made on or after that date" is pertinent. Filing a motion with the district court requesting it to compel arbitration is not the same thing as filing a request for arbitration before the appropriate arbitral forum. When the district court granted PJH's motion to compel arbitration on August 30, 1993, the next step would be to submit the matter to the NASD—that is, make an "arbitration filing." And since any such filing here would occur well after October 28, 1992—the date the SEC approved the NASD rule—it would occur after the effective date of the amended rule and thus would be barred. Hence, we express no opinion as to the magistrate judge's holding that amended Rule 12(d) was to apply retroactively (because PJH did not raise this argument in its brief to this court), but instead conclude that the rule was in effect at the point PJH would have made an arbitration filing, which is a sufficient basis to say that it prohibited PJH from seeking arbitration of Kostantacos' claims.

PJH raises several arguments against our conclusion that its own contract prohibited arbitration; but since most of them are based on mere snippets of the parties' agreement rather than a fair reading of the agreement as a whole we can be brief in our disposition of them. Typical of these is PJH's first argument that since the arbitration clause requires arbitration "to the fullest extent provided by law," this requires arbitration of all of Kostantacos' claim regardless of the amended rules. But the extent of the "law" of arbitration was cut back by the SEC when it pronounced that claims which had been previously filed as a class action or were encompassed by a class action were now ineligible for arbitration. In other words, in adopting these rules the SEC placed these types of claims outside the reach of otherwise enforceable arbitration agreements.[3] PJH specifically agreed that its right to arbitrate would be delineated by the law of arbitration in effect at the time arbitration was sought. Moreover, PJH also agreed in Paragraph 9 that the agreement would incorporate all intervening statutes and regulations that affected or were inconsistent with provisions in the parties' agreement. The SEC changed the law so that PJH's arbitration agreement could no longer be enforced against Kostantacos. Thus, pursuant to its own agreement, PJH could not pursue arbitration.

■ This conclusion disposes of the bulk of PJH's remaining arguments. Yet one does deserve our attention. We find it buried in a footnote in PJH's initial brief. PJH points out that the district court denied Kostantacos' motion for class certification. Since the SEC's new rule does not prohibit arbitration against a member of a class action where class certification has been denied, *see* NASD Rule 12(d)(3)(A), PJH suggests that arbitration of Kostantacos' claim was appropriate. We disagree. Although the district court did not say why it denied the motion for class certification, we can only assume that it was because of its previous order compelling arbitration, which prevented Kostantacos' participation in the purported class. *See Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 n. 5 (11th Cir.), *cert. denied*, 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1987) (securities purchasers whose claims are subject to arbitration are not to be considered members of the class); 3B Moore's *Federal Practice* ¶ 23.04[2] at 23–106 to 23–107 (2d ed. 1995) (to have standing to represent the class the plaintiff-representative must be a member of the class). However, by application of the new rule and the language of the parties'

---

**3.** Before the SEC's rule, individuals who attempted to certify their claims as class actions were subject to the enforcement of their separate arbitration agreements by their broker-dealers. *See, e.g., Coleman v. Nat'l Movie–Dine, Inc.,* 449 F.Supp. 945, 948 (E.D.Pa.1978) (holding that in the absence of an express provision excluding class actions from arbitration, an individual claimant could not get out of his agreement to arbitrate simply by filing his claims in a class action).

agreement, the order compelling arbitration should never have been granted in the first place. Thus, PJH cannot bootstrap the district court's order denying certification as a means to avoid a clear-cut application of the SEC's rule which was incorporated into the parties' agreement and which was in full force at the time the district court ordered the matter to arbitration. Should the district court, in ruling on Kostantacos' renewed motion for class certification, reaffirm its initial determination to deny class certification—for example, because of lack of numerosity or failure to demonstrate the superiority of a class action—then PJH may rely upon that ruling and take advantage of the exception contained within the NASD's rule. Until then, however, PJH must live with the district court's decision to vacate its initial order.

AFFIRMED.