**David A. WOJCIK, Plaintiff,**

v.

**AETNA LIFE INSURANCE AND ANNUITIES COMPANY, Edward F. Bacher, and Edward F. Sommer, Defendants.**

No. 95 C 1447.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 20, 1996.

---

Steven B. Varick, McBride, Baker & Coles, Chicago, IL, for plaintiff.

William Martin Walsh, Sonnenschein, Nath & Rosenthal, Chicago, IL, Thomas R. Kraemer, Charles J. Faruki, Faruki, Gilliam & Ireland, Dayton, OH, Jacqueline A. Criswell, Tressler, Soderstrom, Maloney & Priess, Chicago, IL, Barry H. Wolinetz, Eugene R. Butler, and David C. Levine, Baker & Hostetler, Columbus, OH, for defendants.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

This is an action brought by plaintiff David Wojcik against defendants Aetna Life Insurance and Annuity Company (Aetna), Edward F. Bacher, and Edward F. Sommer. At the heart of Wojcik's complaint is an alleged conspiracy by the defendants to destroy Wojcik's business as an Aetna insurance agent and annuities representative. Bacher was an Aetna agent and Sommer was an Aetna officer, serving as the regional manager of annuity operations and operating out of Aetna's Columbus, Ohio office. The origins of the alleged campaign against Wojcik date back to 1988 when Sommer asked Wojcik to assign all of his client base to Bacher and to become a Bacher employee. Wojcik alleges that when he refused this request, the defendants set out to destroy him by, among other things, reassigning his client base and not assigning new business to him.

Wojcik's complaint is a five-count complaint that charges all three defendants with tortious interference with prospective business advantage (count II), deceptive business practices (count IV), and civil conspiracy (count V). Additionally, Wojcik charges Aetna with breach of contract (count I) and he charges Bacher and Sommer with tortious interference with contract (count III). Wojcik seeks $11 million in damages for Aetna's alleged breach of contract and he seeks $15 million in compensatory damages and $30 million in punitive damages for defendants' allegedly unfair and tortious conduct.

■ The facts of this case are amply set forth in this Court's Memorandum Opinion and Order dated August 25, 1995 (docketed August 28, 1995), *Wojcik v. Aetna Life Ins. & Annuity Co.*, 901 F.Supp. 1282 (N.D.Ill.1995), and shall not be repeated here except as necessary. The August 25 Order granted defendant Aetna's motion to dismiss and compel arbitration. Aetna argued that Wojcik's claims against it should be dismissed—and arbitration compelled—in accordance with Wojcik's agreement to arbitrate, as embodied in his application for registration with the National Association of Securities Dealers (Form U–4) and as·delineated by the

NASD code. *Id.* at 1285. This Court's August 25 ruling that Wojcik's claims against Aetna were subject to arbitration, notwithstanding the fact that the amendment to the NASD code requiring arbitration of employment disputes did not become effective until October 1, 1993 (approximately 9¾ years after Wojcik signed the Form U–4), was predicated in large part on the fact that Wojcik brought this action approximately 1½ years after the effective date of the NASD code amendment. *Id.* at 1288–89. The August 25 Order, however, failed to reflect another fact that was critical to the Court's holding and we take this opportunity to supplement that Order with the following information. At the time that he filed his complaint Wojcik was (and presumably still is) associated with Aetna as an employee, agent, or broker. Moreover, Wojcik's complaint includes allegations of conduct that took place *after* as well as before the effective date of the amendment. *See* Compl. ¶ 17. Thus, we now make clear that our earlier determination that Aetna could compel arbitration under the terms of the NASD code was based on the facts that some of the conduct that is the subject of the complaint took place after the effective date of the NASD amendment while Wojcik was employed with Aetna, *and* that Wojcik filed his complaint after that date.

Having reviewed and clarified our prior Order, we next turn to the motion currently pending before the Court: Bacher and Sommer's motion for clarification of the August 25 Order. Bacher and Sommer note that the August 25 Order (1) dismissed Wojcik's claims against Aetna and concluded that those claims must be arbitrated and (2) stayed the proceedings in this case relating to the claims asserted solely against Bacher and Sommer in count III pending completion of the arbitration. Bacher and Sommer now ask the Court to clarify whether the August 25 Order considered their motion to dismiss and compel arbitration, which was not referred to in the Order. In essence, Bacher and Sommer want to know if Wojcik's claims against them are also subject to arbitration.

We note at the outset that although Bacher and Sommer filed a motion to dismiss and to compel Wojcik to submit the claims alleged in his complaint to arbitration, they did not submit a memorandum of law arguing that the claims directed against *them* were also subject to arbitration. Instead, they filed a document entitled "Memorandum in Support of Motion to Dismiss and to Compel Arbitration of Defendants Edward Bacher and Edward F. Sommer," which states in pertinent part:

> As [Aetna] explained in its Memorandum ..., Plaintiff has agreed to arbitrate any disputes, claims, or controversies arising out of his relationship with [Aetna]. ˙Rather than submit a separate brief that would merely reiterate [Aetna's] arguments, Defendants Bacher and Sommer adopt as their own the arguments advanced by [Aetna].... For the reasons stated by [Aetna], Plaintiff's complaint should be dismissed and Plaintiff should be compelled to arbitrate his claims....

Mem.Supp.Mot.Dis. and Compel of Bacher & Sommer at 1–2.

Aetna's motion to dismiss and accompanying memoranda, however, are silent as to whether Wojcik's claims against the other defendants are subject to arbitration. The only mention of the issue in Aetna's memoranda is to be found in a footnote in their reply brief following a sentence in which Aetna asserts that "Wojcik cannot avoid [his contractual obligation to arbitrate] by adding additional defendants with whom he has no such agreement." Aetna's Resp. to Pl.'s Opp. at 4. The footnote reads, "[Aetna] does not agree that Wojcik is not obligated to arbitrate his dispute with Defendants Edward F. Sommer and Edward Bacher; however, that issue is not relevant to [Aetna's] motion to dismiss and to compel arbitration." *Id.* at 4 n. 3. So while Bacher and Sommer adopted Aetna's arguments, those arguments strictly related to compelling arbitration of the claims against Aetna and were not helpful to Bacher and Sommer.[1] Pursuant to a supplemental briefing schedule entered in

---

1. We take the time to relate this relevant prior procedural history in the hopes that this type of piecemeal adjudication can be avoided in the future through better coordination among the defendants.

connection with Bacher and Sommer's motion for clarification, the parties have now briefed the issue of whether Wojcik's claims against Bacher and Sommer are also subject to arbitration and hence dismissal in this action.

■ To answer this question we return to the language of the NASD code in which the contours of the duty to arbitrate are set forth. Part 1, section 1 of the NASD Code of Arbitration Procedure states in pertinent part:

> This Code of Arbitration Procedure is prescribed and adopted ... for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated person(s) with any member ...:
>
> (1) between or among members;
>
> (2) between or among members and associated persons; [and]
>
> (3) between or among members or associated persons and public customers, or others[.][2]

NASD Code of Arbitration Procedure, Pt. 1, § 1. Construing an earlier version of § 1 in *Farrand v. Lutheran Brotherhood*, 993 F.2d 1253 (7th Cir.1993), the Seventh Circuit noted, "[t]he text following the colon establishes which matters are arbitrable." *Id.* at 1254. Thus, on its face, § 1 includes disputes or controversies among members and associated persons, which is precisely what is involved in counts II (alleging tortious interference with prospective business advantage by Aetna, Sommer, and Bacher), IV (alleging deceptive business practices by Aetna, Sommer, and Bacher), and V (alleging civil conspiracy by Aetna, Sommer, and Bacher).

The analysis has been unnecessarily complicated by the parties' insistence on framing the arbitration issue in terms of whether certain "claims" are eligible for arbitration.[3] But, in so doing, the language of § 1, which refers broadly to "disputes, claims or controversies," not simply "claims," has been completely disregarded. In view of § 1's clear and unambiguous language, the Court has little difficulty concluding that Wojcik's allegations in counts II, IV, and V of his complaint constitute disputes among a member and associated persons, and hence are eligible under § 1 for arbitration *in toto*. To resolve any uncertainty regarding this Court's August 25 Order, we now make it abundantly clear that the arbitration of Wojcik's claims in counts II, IV, and V should encompass Wojcik's claims against Sommer and Bacher.

■ Count III, however, asserts claims solely against Bacher and Sommer; therefore, it requires a different analysis. Unlike counts II, IV, and V, the tortious interference claim directed against Bacher and Sommer in count III cannot fairly be construed as a dispute, claim or controversy "among members and associated persons." Rather, in view of the parties' consensus that Wojcik, Sommer and Bacher are all "associated persons," count III must be regarded as a dispute, claim or controversy solely among associated persons.[4]

Thus, we must examine whether a dispute solely "among associated persons" falls within the ambit of § 1. As we have seen, § 1 limits the scope of disputes eligible for arbitration to those between or among members; between or among members and associated persons; or between or among members or associated persons and public customers, or others. Thus, this Court cannot conclude that a dispute solely among associated persons falls within the plain language of § 1: it is not a dispute among members, nor among members and associated persons, nor among

---

**2.** A fourth category of disputants is plainly not applicable and therefore we will not quote it here.

**3.** Unfortunately, the Court's August 25 Order also followed this convenient, although imprecise, manner of speaking and has thereby further engendered this confusion.

**4.** Consistent with commonly recognized rules of English usage, this Court understands the word "between" as used in § 1 to refer to disputes involving two parties and the word "among" to refer to disputes involving more than two parties. Accordingly, because Wojcik's claims all involve more than two parties, we shall dispense with the cumbersome "between or among" language.

members or associated persons and public customers or others. Thus, the Court finds that Wojcik's claims against Bacher and Sommer are not claims eligible for submission to arbitration under the terms of the code.

■ The Court reaches this conclusion notwithstanding the overriding federal policy favoring arbitration, *see Matthews v. Rollins Hudig Hall Co.*, 72 F.3d 50, 53 (7th Cir. 1995); *Nielsen v. Piper, Jaffray & Hopwood, Inc.*, 66 F.3d 145, 148 (7th Cir.1995), because § 1 simply "is not susceptible of an interpretation that covers the asserted dispute." *Matthews*, 72 F.3d at 53. Section 1(1) plainly and unambiguously refers to disputes solely between or among members. And, in view of § 1(1), it would be unreasonable to read § 1(2)'s reference to disputes "between or among members and associated persons" to refer to anything but disputes in which a member(s) is an adverse party to an associated person(s). In particular, it would be unreasonable to read § 1(2) as referring to *either* (i) disputes solely between or among members, *or* (ii) disputes solely between or among associated persons. When the drafters of the code intended to refer to disputes between or among persons (or entities) of only one type, they knew how to do so—as in § 1(1). It is reasonable to assume that if the drafters intended to reach disputes solely among associated members, they would have included a provision analogous to § 1(1) that would read "between or among associated persons." Furthermore, a reading of § 1(2) under which that section was understood to refer to either (i) disputes between or among members, or (ii) disputes between or among associated persons, would make § 1(1) wholly superfluous. Thus, such a reading of § 1(2) would be unreasonable; and accordingly, we find that § 1(2) is unambiguous. "A contract is unambiguous if it is susceptible to only one reasonable interpretation." *Murphy v. Keystone Steel & Wire Co.*, 61 F.3d 560, 565 (7th Cir.1995). Section 1(2) unambiguously encompasses only disputes in which, as a threshold, a member(s) is adverse to an asso-

ciated person(s). So, we conclude that § 1 of the code, which sets out the matters eligible for submission to arbitration, does not encompass disputes solely between associated persons.[5]

Bacher and Sommer's argument to the contrary is unpersuasive. Bacher and Sommer argue that a determination that § 1 does not encompass disputes solely among associated persons renders language in § 8(a) of Part II of the code meaningless—in contravention of the familiar interpretive principle that language of a contract should be read in harmony and in such a manner so as to avoid rendering any language superfluous or meaningless. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, —— U.S. ——, ——, 115 S.Ct. 1212, 1219, 131 L.Ed.2d 76 (1995); *Nielsen*, 66 F.3d at 148. In particular, these defendants note that Part II § 8(a) provides:

> Any dispute claim or controversy eligible for submission under Part I of this Code between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), shall be arbitrated under this Code, at the instance of:
>
> (1) a member against another member;
>
> (2) a member against a person associated with a member or a person associated with a member against a member; and
>
> (3) a person associated with a member against a person associated with a member.

NASD Code, Pt. II § 8(a). So, defendants argue, if § 1 does not encompass suits among associated persons, § 8(a)(3) becomes meaningless. While we readily acknowledge that the NASD code is far from a model of clarity or consistency, we disagree with defendants' analysis. Part I § 1 of the code sets out the matters eligible for submission, Part II § 8(a) sets out those persons at whose insistence arbitration will be required. For our present purposes, it must be borne in mind that § 8(a)(3) does not purport to serve as a provision defining what disputes

---

**5.** Because no party contends that either of the two other provisions in § 1 is determinative, we *need not discuss them.*

are eligible for arbitration. Section 8(a) expressly indicates that it is Part I of the code that determines what matters are eligible for arbitration ("Any dispute ... eligible for submission under Part I ... shall be arbitrated"); § 8 merely serves to identify when an eligible matter will be required to be submitted to arbitration ("at the instance of" ...). Although § 8(a)(3), which provides that an associated person may require another associated member to arbitrate an eligible claim, could be read as contemplating that disputes solely between or among associated persons are eligible for arbitration, this reading is not compelled.[6] Part I § 1 is clear and ambiguous as to what matters are eligible for submission to arbitration; and, there is no indication whatsoever that § 8(a)(3) was intended as a back-door supplementation to § 1. To the contrary, § 8(a)(3) is quite clear that it is only the matters "eligible for submission under Part I" that may be required to be arbitrated.

As we observed in the August 25 Order, determining what matters the parties intended to be eligible for arbitration is a matter of contract interpretation. *Wojcik*, 901 F.Supp. at 1286; *see also Nielsen*, 66 F.3d at 148; *Kresock v. Bankers Trust Co.*, 21 F.3d 176, 178 (7th Cir.1994); *McCarthy v. Azure*, 22 F.3d 351, 355 (1st Cir.1994). In interpreting a contract the Court's fundamental objective is to give effect to the intent of the parties; and, that intent is to be gleaned, in the first instance, from the plain language of the agreement. *See, e.g., Church v. General Motors Corp.*, 74 F.3d 795, 798 (7th Cir.1996) (applying Illinois law); *Gadsby v. Norwalk Furniture Corp.*, 71 F.3d 1324, 1329 (7th Cir.1995) (applying Ohio law). Where the language is unambiguous, the Court cannot substitute its judgment as to what the parties intended for the plainly expressed language of the parties, *Church*, 74 F.3d at 798; *Gadsby*, 71 F.3d at 1329, particularly where, as here, giving effect to the parties' language will not render sense-

less other provisions of the agreement. Finally, we note that although federal and state court opinions are replete with admonitions that arbitration agreements should be construed broadly in accordance with the federal policy favoring arbitration, *see, e.g., Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983); *Matthews*, 72 F.3d at 53; *Nielsen*, 66 F.3d at 148, as the Eleventh Circuit has observed, we need not twist language in a contract in order to achieve a reading that would require arbitration. *Goldberg v. Bear, Stearns & Co.*, 912 F.2d 1418, 1419–20 (11th Cir.1990). In the instant case, the Court could only read the NASD code as requiring submission of disputes solely among associated persons by improperly disregarding the plain and unambiguous language of the NASD code. The Court has carefully reviewed the authorities cited by the defendants for the proposition that disputes solely between or among associated persons are arbitrable and do not find them persuasive. For instance, in *McDonald v. Mabee*, 241 Ill.App.3d 340, 181 Ill.Dec. 519, 608 N.E.2d 592 (3d Dist.1993), the Illinois Appellate Court simply invoked the interpretive principle that arbitration agreements should be liberally construed, to reach the conclusion that the NASD code required arbitration of claims between associated persons. There was no effort to actually consider the language of § 1 and justify the outcome with the language. *See id.*, 241 Ill.App.3d at 344, 608 N.E.2d at 595. Similarly, there is no relevant analysis in the New York district court's unpublished opinion in *Moore v. Interacciones Global, Inc.*, 1995 WL 33650, 1995 U.S.Dist. LEXIS 971 (S.D.N.Y.1995). Although the *Moore* opinion did contain an analysis of the interrelationship between § 1 and § 8, that analysis bore upon a different issue than that presented here and does not particularly inform the present analysis.[7] Finally, *Brennan v. Stan-*

---

6. Indeed, as this case aptly illustrates, there may be cases in which associated members may be named as codefendants in a suit commenced by an associated person against a member; and, in the event that the associated-person plaintiff and member defendant waive their right to arbitrate, § 8(a)(3) enables the associated-person codefend-

ant to require that the plaintiff and defendant submit their dispute to arbitration.

7. Moreover, the *Moore* opinion was premised on a rejection of the Seventh Circuit's analysis in *Farrand v. Lutheran Bhd.*, 993 F.2d 1253 (7th

*ford,* 236 Ill.App.3d 863, 866–67, 175 Ill.Dec. 473, 475, 600 N.E.2d 404, 406 (1st Dist.1992), does not even mention § 1, let alone attempt to interpret it. Instead, the *Brennan* court merely looked to § 8, an approach that we respectfully decline to follow. Thus, for all of the foregoing reasons, we hold to our prior conclusion that Wojcik's claims asserted solely against Bacher and Sommer in count III of the complaint are not eligible for submission to arbitration. Accordingly, we deny the defendants' motion to dismiss as to count III. In accordance with the August 25 Order, however, all proceedings relating to that count in this Court will be stayed pending completion of the arbitration. As stated in the August 25 Order, the parties are directed to notify this Court within 21 days of the completion of the arbitration proceedings.

### CONCLUSION

Defendants Bacher and Sommer's renewed motion to dismiss complaint and compel arbitration is granted in part and denied in part. Counts II, IV, and V are dismissed. Defendants' motion is denied as to count III. All proceedings relating to count III in this Court are stayed pending completion of the arbitration.

Cir.1993). This Court is bound to follow the holdings of our own court of appeals.