IN RE ZACHARY C. SCOTT

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-01-161-CV

IN RE RELATOR

ZACHARY C. SCOTT

------------

ORIGINAL PROCEEDING

------------

OPINION

------------

I.  Introduction

In this original proceeding, we must decide whether the trial court erred by denying relator Zachary C. Scott’s motion to compel arbitration.  Because we conclude that the trial court erred by denying the motion, we conditionally grant the writ of mandamus.

II.  Background Information

At the time the facts underlying this original proceeding occurred, Scott and Robert Truelson, the real party in interest, were both stockbrokers and registered financial advisors.
(footnote: 1)  They were employed by Prudential Securities, which is a “member” of the National Association of Securities Dealers (NASD).  Thus, they were “associated persons” of Prudential.  To become associated persons of Prudential, both Scott and Truelson registered with NASD by signing a Form U-4, the “Uniform Application for Securities Industry Registration or Transfer.” 

In March 1999, Scott and Truelson entered into a partnership agreement whereby they agreed to remain employees of Prudential, but to share brokerage commissions.  Truelson was contemplating retirement, and Scott was going to take over as many of Truelson’s accounts and customers as possible.  In January 2001, Truelson sued Scott for fraud and breach of the partnership agreement.  

Scott moved to compel arbitration of Truelson’s claims under the Federal Arbitration Act (FAA).  The trial court denied the motion to compel and denied Scott’s objections to discovery based on arbitration.  The trial court granted Truelson’s motion to compel discovery, subject to the parties’ agreement to enter into a protective order regarding the use of discovery.  We stayed the trial court’s discovery order pending the outcome of this original proceeding. 

Form U-4 requires registered persons to submit to arbitration any claim that is eligible for arbitration under the rules of the organizations with which they register.  The amendment to Truelson’s Form U-4, which was in effect from December 1991 throughout the remainder of his employment with Prudential, provides, in pertinent part:  “I agree to arbitrate any dispute, claim, or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations indicated in Item 10 . . . .”  Item 10 includes registration with the NASD. 

The three NASD rules pertinent to arbitration are:

10101.  Matters Eligible for Submission

This Code of Arbitration Procedure is prescribed and adopted . . . for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated person(s) with any member, [with the exception of disputes involving member insurance companies]:

between or among members;

between or among members and associated persons;

between or among members or associated persons and public customers, or others; and

between or among members [and registered clearing agencies and persons using their facilities].

10201.  Required Submission

. . . .

[A] dispute, claim, or controversy eligible for submission under Rule 10100 Series between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under this Code, at the instance of:

a member against another member;

a member against a person associated with a member or a person associated with a member against a member; and

a person associated with a member against a person associated with a member.

10216.  Coordination of Claims Filed in Court and in Arbitration

. . . .

(f) Motion to Compel Arbitration

If a member or a current or former associated person of a member files in court a claim against a member or a current or former associated person of a member that includes matters that are subject to mandatory arbitration, either by the rules of the Association or by private agreement, the defending party may move to compel arbitration of the claims that are subject to mandatory arbitration.

III.  FAA Applies

The FAA governs a contract evidencing a transaction involving interstate commerce if the contract contains a written arbitration provision.
(footnote: 2)  Scott asserts that the FAA applies to the parties’ dispute in this case because their disagreement revolves around the payment of brokerage commissions from the sale of securities and therefore clearly involves interstate commerce.  Truelson asserts that the parties’ dispute is not subject to arbitration because the partnership agreement does not contain an arbitration provision.  The partnership agreement’s lack of an arbitration provision is not dispositive of this issue.  Both Truelson and Scott signed Forms U-4.  A Form U-4 is a separate contract involving the sale of securities, and its arbitration clause is enforceable

under the FAA.  
Williams v. CIGNA Fin. Advisors, Inc.,
 56 F.3d 656, 659-60 (5
th
 Cir. 1995).  Truelson’s agreement, in the Form U-4, to abide by the NASD’s rules is an agreement to arbitrate all matters subject to arbitration under those rules.  
See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Longoria,
 783 S.W.2d 229, 230-31 (Tex. App.—Corpus Christi 1989, orig. proceeding).  Accordingly, we hold that the FAA applies here.

IV.  Arbitrability of Disputes Between Associated Persons

When a party asserts a right to arbitration under the FAA, the question of whether a dispute is subject to arbitration is determined under federal law. 
Prudential Secs., Inc. v. Marshall,
 909 S.W.2d 896, 899 (Tex. 1995) (orig. proceeding). The court is responsible for determining two issues:  (1) whether a party can be compelled to arbitrate under the contract; and (2) what issues the party agreed to arbitrate.  
Litton Fin. Printing Div. v. NLRB,
 501 U.S. 190, 207-09, 111 S. Ct. 2215, 2226 (1991); 
Executone Info. Sys., Inc. v. Davis,
 26 F.3d 1314, 1321 (5
th
 Cir. 1994).  

Rule 10101(b) provides that disputes “between or among members and associated persons” are arbitrable.  The parties disagree sharply over the meaning of this phrase.  Scott contends it means that disputes solely between associated persons, including the dispute in this case, are subject to arbitration.  He contends rule 10101(b) should be read:  “between members; between members and associated persons; or between associated persons.”  Truelson, on the other hand, asserts that rule 10101(b) should be interpreted in a more restricted manner to mean:  “between members; or between members and associated persons.”  Relying on this interpretation, he asserts that the present controversy is not arbitrable.

The scant case 
law on this issue provides some support for each interpretation.
  See
 
McDonald v. Mabee,
 608 N.E.2d 592, 594-95 (Ill. App. Ct.)
 (
holding that claims solely between associated persons are subject to arbitration)
, 
review denied,
 616 N.E.2d 337 (1993); 
see also Williams v. Imhoff,
 203 F.3d 758, 764-65 (10
th
 Cir. 2000) (holding that plaintiffs were associated persons and that defendants, as trustees of member’s stock plan, were either associated persons or “others” under rule 10101(c), so plaintiffs’ claims were subject to arbitration).  
But see Wojcik v. Aetna Life Ins. & Annuities Co.,
 916 F. Supp. 729, 732-33 (N.D. Ill. 1996) (holding that brokerage fee disputes solely between associated persons are not included within the scope of arbitrable claims under rule 10101(b)).
  As this conflicting case law demonstrates, rule 10101(b) is ambiguous; it is susceptible to more than one reasonable interpretation.  
See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,
 940 S.W.2d 587, 589 (Tex. 1996) (holding that contractual ambiguity exists where contract is subject to two or more reasonable interpretations after applying rules of construction); 
Ins. Co. of Pa. v. Moore,
 43 S.W.3d 77, 81 (Tex. App.—Fort Worth 2001, no pet.) (holding statutory ambiguity exists if reasonable persons can find different meanings) (citing 
Teleprofits of Tex., Inc. v. Sharp,
 875 S.W.2d 748, 750 (Tex. App.—Austin 1994, no writ)).

If an agreement is governed by the FAA, any doubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration, including doubts raised by the construction of the contractual language itself. 
 Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp.,
 460 U.S. 1, 24-25, 103 S. Ct. 927, 941 (1983); 
Cantella & Co. v. Goodwin,
 924 S.W.2d 943, 944 (Tex. 1996); 
Prudential Secs.,
 909 S.W.2d at 899.  “The policy in favor of enforcing arbitration agreements is so compelling that a court should not deny arbitration ‘unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.’”  
Prudential Secs.,
 909 S.W.2d at 899 (citing 
Neal v. Hardee’s Food Sys., Inc.,
 918 F.2d 34, 37 (5
th
 Cir. 1990)).  Further, when a court determines that an arbitration provision is ambiguous, the court must resolve the ambiguity in favor of arbitrability.  
Mouton v. Metro. Life Ins. Co.,
 147 F.3d 453, 456 (5
th
 Cir. 1998).

Here, we cannot say with positive assurance that disputes solely between associated persons are outside the scope of rule 10101(b).  Far from it—when rule 10101(b) is read in conjunction with rule 10201(3), a logical interpretation is that disputes solely between associated persons are arbitrable.  Rule 10201(3) provides that disputes eligible for submission “under Rule 10100 Series between or among members 
and/or
 associated persons, and/or certain others” 
shall
 be arbitrated at the instance of an associated person against an associated person.  [Emphasis added.]  This language indicates that disputes between or among associated persons must be arbitrated at the instance of an associated person against an associated person.  If claims solely between or among associated persons are not eligible for arbitration under rule 10101(b), the above provision in rule 10201 is superfluous.  
See Mastrobuono v. Shearson Lehman Hutton, Inc.,
 514 U.S. 52, 63, 115 S. Ct. 1212, 1219 (1995); 
MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,
 995 S.W.2d 647, 652 (Tex. 1999) (both stating that contractual language should be read in an effort to harmonize and give effect to all provisions so that none is rendered meaningless).

Truelson argues, based on 
Wojcik,
 that rules 10101(b) and 10201 work together as follows:  “[Rule 10101] sets out the matters eligible for submission [to arbitration], [Rule 10201] sets out those persons at whose insistence arbitration will be required. . . .  [I]t must be borne in mind that [Rule 10201(3)] does not purport to serve as a provision defining what disputes are eligible for arbitration.”  
See
 916 F. Supp. at 733-34.  While this argument has appeal, it does not persuade us to conclude, as did the 
Wojcik
 court, that rule 10101(b) is unambiguous.  
Id.
 at 733.

Because rule 10101(b) is ambiguous, the ambiguity must be resolved in favor of arbitration.  
Mouton,
 147 F.3d at 456.  We therefore hold that Truelson can be compelled to arbitrate under the NASD rules.

V.  Scope of Arbitration Agreement

Truelson also contends that the parties’ dispute is not within the scope of the arbitration provision in rule 10101 because it is a suit on a debt and does not arise out of either party’s employment with Prudential.  In determining whether a claim falls within the scope of an arbitration agreement, we focus on the factual allegations in the complaint rather than the legal causes of action asserted.  
Prudential Secs.,
 909 S.W.2d at 900.  The burden is on the party opposing arbitration to show that the claims at issue fall outside the scope of the arbitration agreement.  
Id.

Claims subject to arbitration under rule 10101 are not limited to matters arising out of a party’s employment.  Rule 10101 also requires the arbitration of any dispute arising out of or in connection with the business of any member of the NASD.  A partnership agreement to share stock transaction commissions is a matter arising out of or in connection with the business of a member of the NASD and is therefore within the scope of the arbitration clause in rule 10101.  
McDonald,
 608 N.E.2d at 594-95.  Claims for breach of contract, breach of fiduciary duty, interference with contractual and business relations, unfair competition, and conspiracy connected with a member’s business are also arbitrable under the NASD rules.  
First Investors Corp. v. Am. Capital Fin. Servs., Inc.,
 823 F.2d 307, 309 (9
th
 Cir. 1987).

In this case, Truelson alleged in his pleadings that the parties entered into a partnership agreement to share clients and stock transaction commissions, which Scott breached.  Truelson further alleged that Scott fraudulently induced him to enter into the partnership agreement.
(footnote: 3)  Truelson has not established that these claims are outside the scope of the arbitration clause in rule 10101.  Consequently, we hold that the parties agreed to arbitrate these claims.  
See Litton Fin. Printing Div.,
 501 U.S. at 207-09, 111 S. Ct. at 2226; 
Executone Info. Sys.,
 26 F.3d at 1321
.  

VI.  Conclusion

Because claims solely between associated persons are arbitrable and Truelson’s claims are within the scope of the parties’ arbitration agreement, the trial court erred by denying Scott’s motion to compel arbitration.  Where the FAA applies to an arbitration agreement, mandamus is the proper remedy when a party is erroneously denied the right to arbitration.  
Prudential Secs.,
 909 S.W.2d at 900; 
Jack B. Anglin Co. v. Tipps,
 842 S.W.2d 266, 271 (Tex. 1992) (orig. proceeding).  We therefore lift our stay of the trial court’s discovery order and conditionally grant the writ of mandamus.  We are confident that the trial court will vacate its orders denying arbitration and granting Truelson’s motion to compel discovery and will enter an order granting Scott’s motion to compel arbitration.  Our writ will issue only if the trial court fails to do so.

SAM J. DAY

JUSTICE 

PANEL A: DAY, HOLMAN, and GARDNER, JJ.

[DELIVERED:  FEBRUARY 27, 2003]

FOOTNOTES
1:
Truelson has since died.  Robert B. Truelson II, Dr. John M. Truelson, and Dr. Thomas Truelson, the independent co-executors of his estate, have been substituted below in his place.  

2:
The FAA provides:

A written provision in . . . a contract evidencing a transaction involving [interstate] commerce to settle by arbitration a controversy thereafter arising out of such contract . . . or an agreement in writing to submit to arbitration any existing controversy arising out of such a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C.A. § 2 (West 1999).

3:
Truelson does not allege that he was fraudulently induced to enter into the arbitration agreement.