COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-01-161-CV
IN RE           
           
           
           
           
           
           
       
    RELATOR
ZACHARY C. SCOTT
------------
ORIGINAL PROCEEDING
------------
OPINION
------------
I. Introduction
In this original proceeding, we must
decide whether the trial court erred by denying relator Zachary C. Scott's
motion to compel arbitration. Because we conclude that the trial court erred by
denying the motion, we conditionally grant the writ of mandamus.
II. Background Information
At the time the facts underlying this
original proceeding occurred, Scott and Robert Truelson, the real party in
interest, were both stockbrokers and registered financial advisors.(1)
They were employed by Prudential Securities, which is a "member" of
the National Association of Securities Dealers (NASD). Thus, they were
"associated persons" of Prudential. To become associated persons of
Prudential, both Scott and Truelson registered with NASD by signing a Form U-4,
the "Uniform Application for Securities Industry Registration or
Transfer."
In March 1999, Scott and Truelson entered
into a partnership agreement whereby they agreed to remain employees of
Prudential, but to share brokerage commissions. Truelson was contemplating
retirement, and Scott was going to take over as many of Truelson's accounts and
customers as possible. In January 2001, Truelson sued Scott for fraud and breach
of the partnership agreement.
Scott moved to compel arbitration of
Truelson's claims under the Federal Arbitration Act (FAA). The trial court
denied the motion to compel and denied Scott's objections to discovery based on
arbitration. The trial court granted Truelson's motion to compel discovery,
subject to the parties' agreement to enter into a protective order regarding the
use of discovery. We stayed the trial court's discovery order pending the
outcome of this original proceeding.
Form U-4 requires registered persons to
submit to arbitration any claim that is eligible for arbitration under the rules
of the organizations with which they register. The amendment to Truelson's Form
U-4, which was in effect from December 1991 throughout the remainder of his
employment with Prudential, provides, in pertinent part: "I agree to
arbitrate any dispute, claim, or controversy that may arise between me and my
firm, or a customer, or any other person, that is required to be arbitrated
under the rules, constitutions, or by-laws of the organizations indicated in
Item 10 . . . ." Item 10 includes registration with the NASD.
The three NASD rules pertinent to
arbitration are:

 10101. Matters Eligible for
 Submission
 This Code of Arbitration Procedure is
 prescribed and adopted . . . for the arbitration of any dispute, claim, or
 controversy arising out of or in connection with the business of any member of
 the Association, or arising out of the employment or termination of employment
 of associated person(s) with any member, [with the exception of disputes
 involving member insurance companies]:
 
 between or among members;
 
 
 between or among members and
 associated persons;
 
 
 between or among members or
 associated persons and public customers, or others; and
 
 
 between or among members [and
 registered clearing agencies and persons using their facilities].
 


 10201. Required Submission
 
 . . . .
 
 [A] dispute, claim, or controversy
 eligible for submission under Rule 10100 Series between or among members
 and/or associated persons, and/or certain others, arising in connection with
 the business of such member(s) or in connection with the activities of such
 associated person(s), or arising out of the employment or termination of
 employment of such associated person(s) with such member, shall be arbitrated
 under this Code, at the instance of:
 
 a member against another member;
 
 
 a member against a person associated
 with a member or a person associated with a member against a member; and
 
 
 a person associated with a member
 against a person associated with a member.
 



 10216. Coordination of Claims
 Filed in Court and in Arbitration
 
 . . . .
 
 (f) Motion to Compel Arbitration
 If a member or a current or former
 associated person of a member files in court a claim against a member or a
 current or former associated person of a member that includes matters that are
 subject to mandatory arbitration, either by the rules of the Association or by
 private agreement, the defending party may move to compel arbitration of the
 claims that are subject to mandatory arbitration.
 

III. FAA Applies
The FAA governs a contract evidencing a
transaction involving interstate commerce if the contract contains a written
arbitration provision.(2) Scott asserts that the
FAA applies to the parties' dispute in this case because their disagreement
revolves around the payment of brokerage commissions from the sale of securities
and therefore clearly involves interstate commerce. Truelson asserts that the
parties' dispute is not subject to arbitration because the partnership agreement
does not contain an arbitration provision. The partnership agreement's lack of
an arbitration provision is not dispositive of this issue. Both Truelson and
Scott signed Forms U-4. A Form U-4 is a separate contract involving the sale of
securities, and its arbitration clause is enforceable under the FAA. Williams
v. CIGNA Fin. Advisors, Inc., 56 F.3d 656, 659-60 (5th Cir.
1995). Truelson's agreement, in the Form U-4, to abide by the NASD's rules is an
agreement to arbitrate all matters subject to arbitration under those rules. See
Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Longoria, 783 S.W.2d
229, 230-31 (Tex. App.--Corpus Christi 1989, orig. proceeding). Accordingly, we
hold that the FAA applies here.
IV. Arbitrability of
Disputes Between Associated Persons
When a party asserts a right to
arbitration under the FAA, the question of whether a dispute is subject to
arbitration is determined under federal law. Prudential Secs., Inc. v.
Marshall, 909 S.W.2d 896, 899 (Tex. 1995) (orig. proceeding). The court is
responsible for determining two issues: (1) whether a party can be compelled to
arbitrate under the contract; and (2) what issues the party agreed to arbitrate.
Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 207-09, 111 S. Ct.
2215, 2226 (1991); Executone Info. Sys., Inc. v. Davis, 26 F.3d 1314,
1321 (5th Cir. 1994).
Rule 10101(b) provides that disputes
"between or among members and associated persons" are arbitrable. The
parties disagree sharply over the meaning of this phrase. Scott contends it
means that disputes solely between associated persons, including the dispute in
this case, are subject to arbitration. He contends rule 10101(b) should be read:
"between members; between members and associated persons; or between
associated persons." Truelson, on the other hand, asserts that rule
10101(b) should be interpreted in a more restricted manner to mean:
"between members; or between members and associated persons." Relying
on this interpretation, he asserts that the present controversy is not
arbitrable.
The scant case law on this issue provides
some support for each interpretation. See McDonald v. Mabee,
608 N.E.2d 592, 594-95 (Ill. App. Ct.) (holding that claims solely between
associated persons are subject to arbitration), review denied, 616
N.E.2d 337 (1993); see also Williams v. Imhoff, 203 F.3d 758, 764-65
(10th Cir. 2000) (holding that plaintiffs were associated persons and
that defendants, as trustees of member's stock plan, were either associated
persons or "others" under rule 10101(c), so plaintiffs' claims were
subject to arbitration). But see Wojcik v. Aetna Life Ins. & Annuities
Co., 916 F. Supp. 729, 732-33 (N.D. Ill. 1996) (holding that brokerage fee
disputes solely between associated persons are not included within the scope of
arbitrable claims under rule 10101(b)). As this conflicting case law
demonstrates, rule 10101(b) is ambiguous; it is susceptible to more than one
reasonable interpretation. See Columbia Gas Transmission Corp. v. New Ulm
Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996) (holding that contractual
ambiguity exists where contract is subject to two or more reasonable
interpretations after applying rules of construction); Ins. Co. of Pa. v.
Moore, 43 S.W.3d 77, 81 (Tex. App.--Fort Worth 2001, no pet.) (holding
statutory ambiguity exists if reasonable persons can find different meanings)
(citing Teleprofits of Tex., Inc. v. Sharp, 875 S.W.2d 748, 750 (Tex.
App.--Austin 1994, no writ)).
If an agreement is governed by the FAA,
any doubts concerning the scope of the arbitrable issues should be resolved in
favor of arbitration, including doubts raised by the construction of the
contractual language itself. Moses H. Cone Mem'l Hosp. v. Mercury Constr.
Corp., 460 U.S. 1, 24-25, 103 S. Ct. 927, 941 (1983); Cantella &
Co. v. Goodwin, 924 S.W.2d 943, 944 (Tex. 1996); Prudential Secs.,
909 S.W.2d at 899. "The policy in favor of enforcing arbitration agreements
is so compelling that a court should not deny arbitration 'unless it can be said
with positive assurance that an arbitration clause is not susceptible of an
interpretation which would cover the dispute at issue.'" Prudential
Secs., 909 S.W.2d at 899 (citing Neal v. Hardee's Food Sys., Inc.,
918 F.2d 34, 37 (5th Cir. 1990)). Further, when a court determines
that an arbitration provision is ambiguous, the court must resolve the ambiguity
in favor of arbitrability. Mouton v. Metro. Life Ins. Co., 147 F.3d
453, 456 (5th Cir. 1998).
Here, we cannot say with positive
assurance that disputes solely between associated persons are outside the scope
of rule 10101(b). Far from it--when rule 10101(b) is read in conjunction with
rule 10201(3), a logical interpretation is that disputes solely between
associated persons are arbitrable. Rule 10201(3) provides that disputes eligible
for submission "under Rule 10100 Series between or among members and/or
associated persons, and/or certain others" shall be arbitrated at
the instance of an associated person against an associated person. [Emphasis
added.] This language indicates that disputes between or among associated
persons must be arbitrated at the instance of an associated person against an
associated person. If claims solely between or among associated persons are not
eligible for arbitration under rule 10101(b), the above provision in rule 10201
is superfluous. See Mastrobuono v. Shearson Lehman Hutton, Inc., 514
U.S. 52, 63, 115 S. Ct. 1212, 1219 (1995); MCI Telecomms. Corp. v. Tex.
Utils. Elec. Co., 995 S.W.2d 647, 652 (Tex. 1999) (both stating that
contractual language should be read in an effort to harmonize and give effect to
all provisions so that none is rendered meaningless).
Truelson argues, based on Wojcik,
that rules 10101(b) and 10201 work together as follows: "[Rule 10101] sets
out the matters eligible for submission [to arbitration], [Rule 10201] sets out
those persons at whose insistence arbitration will be required. . . . [I]t must
be borne in mind that [Rule 10201(3)] does not purport to serve as a provision
defining what disputes are eligible for arbitration." See 916 F.
Supp. at 733-34. While this argument has appeal, it does not persuade us to
conclude, as did the Wojcik court, that rule 10101(b) is unambiguous. Id.
at 733.
Because rule 10101(b) is ambiguous, the
ambiguity must be resolved in favor of arbitration. Mouton, 147 F.3d at
456. We therefore hold that Truelson can be compelled to arbitrate under the
NASD rules.
V. Scope of Arbitration
Agreement
Truelson also contends that the parties'
dispute is not within the scope of the arbitration provision in rule 10101
because it is a suit on a debt and does not arise out of either party's
employment with Prudential. In determining whether a claim falls within the
scope of an arbitration agreement, we focus on the factual allegations in the
complaint rather than the legal causes of action asserted. Prudential Secs.,
909 S.W.2d at 900. The burden is on the party opposing arbitration to show that
the claims at issue fall outside the scope of the arbitration agreement. Id.
Claims subject to arbitration under rule
10101 are not limited to matters arising out of a party's employment. Rule 10101
also requires the arbitration of any dispute arising out of or in connection
with the business of any member of the NASD. A partnership agreement to share
stock transaction commissions is a matter arising out of or in connection with
the business of a member of the NASD and is therefore within the scope of the
arbitration clause in rule 10101. McDonald, 608 N.E.2d at 594-95.
Claims for breach of contract, breach of fiduciary duty, interference with
contractual and business relations, unfair competition, and conspiracy connected
with a member's business are also arbitrable under the NASD rules. First
Investors Corp. v. Am. Capital Fin. Servs., Inc., 823 F.2d 307, 309 (9th
Cir. 1987).
In this case, Truelson alleged in his
pleadings that the parties entered into a partnership agreement to share clients
and stock transaction commissions, which Scott breached. Truelson further
alleged that Scott fraudulently induced him to enter into the partnership
agreement.(3) Truelson has not established that
these claims are outside the scope of the arbitration clause in rule 10101.
Consequently, we hold that the parties agreed to arbitrate these claims. See
Litton Fin. Printing Div., 501 U.S. at 207-09, 111 S. Ct. at 2226; Executone
Info. Sys., 26 F.3d at 1321.
VI. Conclusion
Because claims solely between associated
persons are arbitrable and Truelson's claims are within the scope of the
parties' arbitration agreement, the trial court erred by denying Scott's motion
to compel arbitration. Where the FAA applies to an arbitration agreement,
mandamus is the proper remedy when a party is erroneously denied the right to
arbitration. Prudential Secs., 909 S.W.2d at 900; Jack B. Anglin
Co. v. Tipps, 842 S.W.2d 266, 271 (Tex. 1992) (orig. proceeding). We
therefore lift our stay of the trial court's discovery order and conditionally
grant the writ of mandamus. We are confident that the trial court will vacate
its orders denying arbitration and granting Truelson's motion to compel
discovery and will enter an order granting Scott's motion to compel arbitration.
Our writ will issue only if the trial court fails to do so.
                                                                       
SAM J. DAY
                                                                       
JUSTICE
PANEL A: DAY, HOLMAN, and GARDNER, JJ.
[DELIVERED: FEBRUARY 27, 2003]

1. Truelson has since died. Robert B. Truelson II, Dr.
John M. Truelson, and Dr. Thomas Truelson, the independent co-executors of his
estate, have been substituted below in his place.
2. The FAA provides:

 A written provision in . . . a contract
 evidencing a transaction involving [interstate] commerce to settle by
 arbitration a controversy thereafter arising out of such contract . . . or an
 agreement in writing to submit to arbitration any existing controversy arising
 out of such a contract . . . shall be valid, irrevocable, and enforceable,
 save upon such grounds as exist at law or in equity for the revocation of any
 contract.

9 U.S.C.A. § 2 (West 1999).
3. Truelson does not allege that he was fraudulently
induced to enter into the arbitration agreement.