[No. 2573.]

## P. A. DOWLEN v. THE STATE.

1. AGGRAVATED ASSAULT—EVIDENCE.—The prosecution for aggravated assault was based upon a chastisement inflicted by an adult school teacher upon an infant pupil. The prosecution was permitted, over the objection of the defense, to prove that the pupil, two or three nights after the chastisement, told his father that he could not sleep, because his hips were so sore it pained him to turn in bed. *Held*, that this declaration was made too long after the injury to be admissible in evidence.

2. SAME.—The admissibility in evidence of the declarations of an injured party respecting his injuries is regulated by the following rules: The character of an injury may be explained by exclamations of pain and terror at the time the injury is received, and by declarations as to its cause. When the nature of a party's sickness or hurt is in litigation, his instinctive declarations to his physician or other attendant during such sickness may be received. Immediate groans and gestures are in like manner competent. But declarations made after convalescence, or when there has been an opportunity to think over the matter in reference to projected litigation, are inadmissible. When subsequent declarations are part of the case, on which the opinion of a physician as an expert is based, they have been received. But *held*, that the declarations of the injured party in this case do not come within any of the said exceptions.

3. SAME—CHARGE OF THE COURT.—The court charged the jury as follows: "1. When an injury is caused by violence to the person, the intent to injure is presumed, and it rests upon the person inflicting the injury to show the accident or innocent intention. The injury intended may be either bodily pain, constraint, a sense of shame or other disagreeable emotion of the mind. 2. When violence is permitted to effect a lawful purpose, only that degree of force must be used which is necessary to effect such purpose." *Held*, correct in the abstract, but erroneous when applied to the present case. See the opinion *in extenso* for an elaborate discussion of the reasons.

4. SAME.—See the statement of the case for special instructions requested which, embodying correctly the law applicable to the facts, were improperly refused in the trial of a teacher for chastising his pupil.

APPEAL from the County Court of Collin. Tried below before the Hon. T. C. Goodner, County Judge.

The county attorney of Collin county, Texas, presented an information in the county court of said county, on the twenty-seventh day of February, 1883, under Article 496, Revised Crim-

inal Code, based upon the written affidavit of one Lafayette Wisdom, charging that appellant did, on the thirteenth day of February, 1883, unlawfully commit an aggravated assault and battery upon the person of D. H. Wisdom, with intent to injure him; that said D. H. Wisdom was then and there a child, and appellant was an adult male person. The trial resulted in the conviction of the appellant, and his punishment was assessed at a fine of ten dollars.

D. H. Wisdom was the first witness for the State. He testified in substance that he was thirteen years old. He attended a school taught in the Farmersville Academy by the defendant, in January, 1883. Witness and Edgar Clifton got into a fight on a Monday in January, 1883, and on the next day, Tuesday, the defendant whipped the witness with a bois d'arc switch about five feet long and as large around at the butt as the witness's third finger. The defendant said that he disliked very much to whip the witness, but felt constrained to do so as a matter of duty. He struck the witness twenty-two licks over the shoulders, back, hips and thighs, cutting the blood from the thigh and two holes in the witness's pants. Witness was sore on the shoulders, hips and thighs for two weeks thereafter—so sore that it was painful for him to turn in bed. The defendant did not appear angry at the time, but on the contrary talked kindly to the witness, and even shed tears, and said that he hated to do the whipping. He whipped Edgar Clifton at the same time. Witness called Edgar a liar, and Edgar called witness a d—d son of a b—h. Witness thereupon struck Edgar with a ball of mud, and they went to fighting. Witness knew that it was against the rules of the school to swear or use profane language on the play ground, or to scuffle and wrestle, but did not know that it was against the rules to fight.

Witness told his father of the whipping when he went home, and his father examined his person. Jim Church examined witness on Wednesday. Doctor Nethery, John Utt and Joe Binkley examined the witness one day that week. John Rike, Frank Rike and Mr. Grimes also examined the witness. The witness remained at school all day the Tuesday of the whipping, and was there next day and on Thursday, and would have attended school on Friday but for the rain.

Lafayette Wisdom, father of the injured boy, testified, for the State, that on being told by his son that the defendant had whipped him, he examined his person, and found sixteen scarlet,

red and dark marks on his person. These marks were all long except two places on his right thigh, where there were two holes as large as the end of the witness's finger, and looked as though they might have been made by gun shots. The scarlet marks were black by morning. The witness found blood on his son's drawers. His son complained of soreness for some time, and said that it pained him to turn in bed. Witness took the boy to squire Rike on Thursday morning. Bickley, Nethery and Utt, trustees of the school, examined the boy on Wednesday after the whipping.

Bickley and Church testified, for the State, that they examined the boy, the first at noon and the other at night of the Wednesday after the whipping. They described the marks and abrasions of the skin on the boy's person as severe. Church counted as many as thirteen stripes extending from the boy's shoulders to a point down on his legs. Bickley was a trustee and patron of the school.

Dr. A. H. Nethery testified, for the defense, that he was a trustee and patron of the school. He, with Bickley and Utt, examined the boy at noon on Wednesday. He found five or six marks on the boy's rump and legs. He saw two small circular marks, about the eighth of an inch in diameter, on his hips. These were the severest wounds. *Serum*, the watery element of blood, had exuded and formed such a scab as forms over a slight scratch. The defendant's general character in the community is good, and he sustained the reputation of a kind, humane teacher.

The testimony of trustee Utt was substantially the same as that of Dr. Nethery.

The third special instruction asked by the defendant, and which was refused, reads as follows:

"If you find from the evidence that the defendant did chastise D. H. Wisdom, but that at the time the defendant was a school teacher, and said Wisdom was his pupil, and that the chastisement was administered to him by defendant because said Wisdom had engaged in a fight at school with another pupil, or had used improper and unbecoming language, or had in any other way violated the rules and regulations of the school; and that such chastisement was inflicted by the defendant upon said Wisdom for the purpose of correcting him, and in good faith and without any intention on the part of the defendant to injure said Wisdom, and without any passion, spite or ill-will

towards said Wisdom, then you will find the defendant not guilty, even though you should find from the evidence that the chastisement administered was more severe than was actually necessary."

The fourth refused special instruction reads as follows:

"In order to constitute an assault and battery, it is necessary that the violence used should have been done with the purpose and intention of inflicting an injury; but when an injury is caused the law presumes that it was inflicted with the intent to injure, which presumption of law may be rebutted or contradicted, by the person inflicting the injury showing that his intention was innocent, and that his purpose was not unlawful, which innocent intention and purpose may be shown by the acts, conduct, manner and declarations of the person inflicting the injury, made at the time when such injury was inflicted."

The motion for new trial raised the question involved in the opinion, and denounced the verdict as unsupported by the evidence.

*J. A. L. Wolfe* and *Garnett & Muse* filed an able and exhaustive brief for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

White, Presiding Judge.   This prosecution was by an information which charged appellant with an aggravated assault, he being an adult male, committed upon the person of one D. H. Wisdom, a child.   Appellant was a school teacher and D. H. Wisdom one of his pupils; and it appears by the evidence that the castigation was inflicted on account of a violation of the rules of the school by the pupil.

By the first bill of exceptions it is shown that the prosecution was allowed to prove, over objections, that, two or three nights after the whipping, the injured party told his father that he could not rest or sleep because his hips were so sore that it hurt him to turn over in bed.   This evidence was inadmissible, because the statements were made too long after the infliction of the injury.   Mr. Wharton has discussed this subject in one of his standard works.   He says: "The character of an injury may be explained by exclamations of pain and terror at the time the injury is received, and by declarations as to its cause. When, also, the nature of a party's sickness or hurt is in litiga-

tion, his instinctive declarations to his physician or other attend-
ant during such sickness may be received. Immediate groans
and gestures are, in like manner, admissible. But declarations
made after convalescence, or when there has been an oppor-
tunity to think over the matter in reference to projected litiga-
tion, are inadmissible. * * * But where such subsequent
declarations are part of the case, on which the opinion of the
physician as an expert is based, they have been received."
Whart. Crim. Evi., 8 Ed., Sec. 271. Not coming within any of
the exceptions pointed out, it was error in the court to admit
the testimony.

Complaint is made, in the second bill of exceptions, of the
charges given by the court at the request of the county attorney,
in the following terms, viz: "1. When an injury is caused by
violence to the person, the intent to injure is presumed, and it
rests with the person inflicting the injury to show the accident
or innocent intention. The injury intended may be either
bodily pain, constraint, a sense of shame, or other disagreeable
emotion of the mind. 2. When violence is permitted to effect a
lawful purpose, only that degree of force must be used which
is necessary to effect such purpose."

The proposition announced in the first paragraph, though un-
questionably correct in the abstract and declared as law in
terms by our statute (Penal Code, Article 485), is not applicable,
without further explanation, to cases such as the one under con-
sideration. It has direct application only to acts of "unlawful
violence," in the first instance, such as are essential to constitute
the assaults and batteries defined in Article 484, Penal Code.

But "violence used to person" is not unlawful, and "does not
amount to an assault and battery in the exercise of moderate
restraint or correction given by law to the parent over the child,
the guardian over the ward, the master over his apprentice, the
teacher over the scholar." (Penal Code, Article 490.) In all
such cases the law presumes, from the relation of the parties, an
entire absence of any criminal or unlawful intent to injure; and,
in order to effect lawful purposes, permits the parent, guardian,
master, or teacher to restrain and correct the child, ward, ap-
prentice, and scholar. When the teacher corrects his scholar
the presumption is that it is in the exercise and within the
bounds of his lawful authority, and it does not "devolve upon
him to show accident or his innocent intention." Neither is it any
criterion of his act or intention that "bodily pain, constraint,

a sense of shame or other disagreeable emotion of the mind" is produced. He has the right, under the law, to inflict moderate corporal punishment for the purpose of restraining or correcting the refractory pupil. But "where violence is permitted to effect a lawful purpose, only that degree of force must be used which is necessary to effect such purpose." (Penal Code, Arts. 490, 491.

It being established that appellant was an adult male—that Wisdom, the party alleged to have been injured, was a child—that the former was a teacher and the latter his scholar—that the whipping took place at the time charged in the information, the main question to be determined was, "was the correction or whipping moderate or excessive?" If it be shown that the force is excessive, then, indeed, the rule as to presumed intention may apply; but this presumption of the law is not conclusive even then. Upon this supposed state of the case, the third and fourth requested instructions of defendant, which were refused, presented the law most aptly and fully, and the court erred in not giving them. "If the correction was moderate defendant was not guilty of an assault and battery at all. If it was not moderate, but excessive, he was guilty of an aggravated assault and battery, by having exceeded the boundary of his legal right as teacher, and placed himself in the attitude of a stranger. It is true the law has not laid down any fixed measure of moderation in the lawful correction of a scholar, nor is it practicable to do so. Whether it is moderate or excessive must necessarily depend upon the age, sex, condition and disposition of the scholar, with all the attending and surrounding circumstances to be judged of by the jury, under the direction of the court as to the law of the case." (*Stanfield* v. *The State*, 43 Texas, 167.)

It was error to give the instruction we have discussed and to refuse the third and fourth special instructions; and the charge as given, which was also excepted to, did not properly and sufficiently present the issues and law of the case.

For the errors pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered April 19, 1883.