**TELEPROFITS OF TEXAS, INC., Appellant,**

v.

**John SHARP, Comptroller of Public Accounts; Kay Bailey Hutchison, Treasurer of the State of Texas; and Dan Morales, Attorney General of the State of Texas, Appellees.**

No. 3–93–312–CV.

Court of Appeals of Texas, Austin.

April 27, 1994.

Rehearing Overruled April 27, 1994.

Jim Boyle, Boyle & Bender, Austin, for appellant.

Dan Morales, Atty. Gen., Christine Monzingo, Asst. Atty. Gen., Austin, for appellees.

Before ABOUSSIE, KIDD and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

Appellant Teleprofits of Texas, Inc. ("Teleprofits"), sued John Sharp, Comptroller of Public Accounts for the State of Texas, Kay Bailey Hutchison, Treasurer, and Dan Morales, Attorney General of the State of Texas (collectively "the Comptroller"), for the return of sales tax paid under protest. *See* Act of May 15, 1981, 67th Leg., R.S., ch. 389, § 1, 1981 Tex.Gen.Laws 1492, 1512 (Tex. Tax Code Ann. ("Tax Code") §§ 112.052–.053, since amended). The trial court rendered a take-nothing judgment from which Teleprofits appeals. We will affirm the judgment of the trial court.

## BACKGROUND

Teleprofits is a regulated provider [1] of telecommunications services and has provided coin-operated telephone services in the Houston area since 1988. As part of its business, Teleprofits must buy access to a telephone network by purchasing customer-owned and coin-operated telephone ("COCOT") lines through the local exchange company. Teleprofits then sells individual access to the telephone network from its payphones and collects the charges as revenue. Teleprofits does not sell its local exchange access to other regulated providers.

As a retailer, Teleprofits must pay sales tax on its coin revenues unless it qualifies for an exemption. *See* Tax Code §§ 151.051–.052. Teleprofits charges twenty-five cents for each local call and deducts the sales tax from its gross revenues. Believing that it qualifies for an exemption, Teleprofits brought suit for the return of $75,450.35 in sales taxes it paid under protest during 1992. *See* Tax Code § 112.052(a). The trial court rendered a take-nothing judgment. Teleprofits now appeals.

## DISCUSSION

■ In a single point of error, Teleprofits argues that the district court erred as a

---

1. At trial, it was determined that Teleprofits is a regulated provider for the purposes of section 151.323(2) of the Tax Code. Teleprofits does not dispute its status as a regulated provider. Teleprofits is regulated by the Public Utility Commission. *See* 16 Tex.Admin.Code § 23.54 (1993).

matter of law in concluding that it was not exempt from paying sales tax under section 151.323(2) of the Tax Code, which provides:

> There are exempted from the taxes imposed by this chapter the receipts from the sale, use, or other consumption in this state of:
>
> > (2) access to a local exchange telephone company's network by a regulated provider of telecommunications services....

Tax Code § 151.323(2).

Teleprofits argues that the trial court misconstrued the statute when it concluded that Teleprofits did not satisfy the criteria to qualify for a tax exemption under section 151.323(2) of the Tax Code. The statute exempts (1) the sale, use, or other consumption of access to a local network (2) by a regulated provider. Teleprofits argues that because it is a regulated provider, the "sale of access" exemption applies to all of its business transactions, qualifying it for a tax exemption both when it *buys* access to a local network and also when it *sells* that access to its customers. We disagree.

■ Statutory exemptions from taxation are subject to strict construction because they place a greater burden on other tax-paying businesses and individuals. *North Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991); *Bullock v. National Bancshares Corp.*, 584 S.W.2d 268, 271–72 (Tex.1979); *Hilltop Village, Inc. v. Kerrville Indep. Sch. Dist.*, 426 S.W.2d 943, 948 (Tex.1968). Accordingly, the claimant bears the burden of showing that the organization falls within the statutory exemption. *North Alamo Water Supply*, 804 S.W.2d at 899; *National Bancshares*, 584 S.W.2d at 272. All doubts are resolved in favor of the taxing authority. *National Bancshares*, 584 S.W.2d at 272.

We agree that Teleprofits has satisfied the statutory criteria when, as a regulated provider, it purchases access from a local network. However, applying the rules of strict construction to section 151.323(2), we do not agree that the statute allows Teleprofits an exemption both when it purchases access to the local network and again when it sells that access to its customers. Such an interpreta-

tion would exempt Teleprofits from paying sales tax altogether. We read the "sale of access" provision to apply only to those transactions in which the local exchange carrier provides access to the regulated provider, in this case, Teleprofits.

Teleprofits makes a series of arguments that rest on a central assertion that the statutory exemption is clear and unambiguous. Teleprofits asserts that because the statute is clear on its face, (1) this Court may not use extrinsic aids or rules of statutory construction to guide its interpretation of the statute; (2) the Comptroller's interpretation of the statute abrogates its plain meaning; and, (3) the trial court erred when it deferred to the Comptroller's erroneous interpretation of the statute.

■ We reject appellant's argument that the statutory language creating this exemption is so clear that this Court may not rely on standard rules of statutory construction to interpret its meaning. "Ambiguity exists when a statute is capable of being understood by reasonably well-informed persons in two or more different senses." 2A Norman J. Singer, *Sutherland Statutory Construction* § 45.02, at 6 (5th ed. 1992) [hereinafter *Sutherland* ]. The Comptroller understands this exemption to apply only to the *original sale of access* to a local exchange company's network to a regulated provider. Teleprofits understands *all subsequent sales of access* by a regulated provider to ultimate consumers to also be exempt from sales tax. We conclude that the language of section 151.323 could reasonably be understood in these two conflicting senses and we must rely on standard rules of statutory construction to determine whether to apply the exemption to Teleprofits' receipts from payphone customers.

The Code Construction Act expressly governs construction of the Tax Code. Tax Code § 1.03; *Southwest Airlines Co. v. Bullock*, 784 S.W.2d 563, 567 (Tex.App.—Austin 1990, no writ). The Code Construction Act provides that when construing a statute, courts may consider among other things: (1) the object sought to be attained by the statute; (2) the circumstances under which the statute was enacted; (3) legislative history; (4) common law or former statutory provi-

sions; (5) consequences of a particular construction; (6) administrative construction of the statute; and (7) the title or caption, preamble, and emergency provisions. Code Construction Act, Tex. Gov't Code Ann. § 311.023 (West 1988) ("Code Construction Act"); *Townsend v. State*, 846 S.W.2d 386, 387 (Tex.App.—Houston [14th Dist.] 1992, no pet.); *Dallas Mkt. Ctr. Dev. Co. v. Beran & Shelmire*, 824 S.W.2d 218, 221 (Tex.App.—Dallas 1991, writ denied).

We first consider the legislative history and purpose in promulgating this tax exemption. Before the enactment of House Bill 1949 ("H.B. 1949"), the telecommunications industry was taxed under the miscellaneous gross receipts tax originally enacted in 1907 and amended with nonsubstantive revisions in 1981. *See* Act of May 9, 1985, 69th Leg., R.S., ch. 206, § 9, 1985 Tex.Gen.Laws 792, 793 (Tex.Tax Code Ann. § 151.323(3), since amended); Act of May 31, 1981, 67th Leg., ch. 389, § 1, 1981, Tex.Gen.Laws 1490, 1787; House Comm. on Ways and Means, Bill Analysis, Tex. H.B.1949, 69th Leg., R.S. (1985) [hereinafter *Bill Analysis* ]; *see also* Senate Comm. on Finance, Committee Report, Tex.H.B.1949, 69th Leg., R.S. (1985) ("Fiscal Notes"). Major changes within the telecommunications industry, including the divestiture of AT & T, enormous technological advances, and the influx of new telephone businesses, had rendered the 1907 tax impractical to administer. *Bill Analysis* at 1. Beginning in 1983, the Comptroller's efforts to tax new telecommunications providers under the old gross receipts tax precipitated a series of lawsuits that jeopardized nearly half of the projected revenues. *Id.* Further, the absence of an appropriate tax regime subjected some telephone companies to double or multiple taxation, causing unfair competition within the industry. *Id.* A general controversy developed over which companies were to be taxed, what services were taxable, and how the taxes were to be paid. *Id.* H.B.1949 attempted to resolve some of these controversies and to implement a system of adequate and fair taxation in the telecommunications industry.[2] *Id.*

Interpreting section 151.323(2) to exempt Teleprofits from the gross receipts tax *and* the sales tax allows Teleprofits to escape paying tax altogether. Such a result ignores the legislature's overriding intent to impose a regime of equitable taxation, and violates the tenet that courts must be guided by legislative intent when interpreting a statute. *City of Sherman v. Public Utility Commission of Texas*, 643 S.W.2d 681, 684 (Tex.1983); *Southwestern Bell Telephone Co. v. Public Utility Comm.*, 863 S.W.2d 754, 757 (Tex. App.—Austin 1993). Affording Teleprofits favorable tax treatment would also defeat the goal of promoting fair competition within the telecommunications industry. When interpreting a statute, we presume that a just and reasonable result is intended. Code Construction Act § 311.021(4). By adopting Teleprofits' interpretation, we would perpetuate the very problems H.B.1949 was designed to cure. "Before the true meaning of a statute can be determined where there is genuine uncertainty concerning its applications, consideration must be given to the problem in society to which the legislature addresses itself." *Sutherland* § 45.02, at 7. Moreover, Teleprofits' analysis ignores the specific purpose of the statutory exemption at issue. The section-by-section analysis of the amendments introduced by H.B.1949 explains that while the basic local exchange telephone service would also remain subject to the gross receipts tax, the access charges paid by providers of telecommunications service would be subject to the sales tax. *See* Bill Analysis at 2, § 8.

The legislative explanation of the exemption created by section 151.323(2) is clear. First, the legislature meant to exempt local exchange carriers from paying sales tax on their *sale* of local network access; they would instead remain subject to tax on their gross receipts. Under this taxing scheme the local exchange carrier would be taxed only once. The bill analysis explains that regulated providers also would be exempt from sales tax on their *purchase of access* from local exchange carriers; the legislature

---

**2.** The bill analysis specifies several purposes including: (1) ensuring equitable taxation across the telecommunications industry; (2) eliminating the competition problems resulting from multiple taxation; and, (3) shifting most telecommunications services into the sales tax.

reserved taxation until the regulated providers' *sale of access* to the final consumer. In effect, the regulated provider also would be taxed only once. In sum, the exemption ensures that no telecommunications service provider will be subject to *both* a gross receipts tax and a sales tax. Based on its legislative history and purpose, we conclude that section 151.323(2) applies only to Teleprofits' original purchase of access and does not exempt Teleprofits from paying sales tax on its consumer sales.

■ We next consider the Comptroller's interpretation. The Code Construction Act directs us to consider agency construction of the statute we are interpreting. Code Construction Act § 311.023(5). "Construction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute." *Tarrant Appraisal Dist. v. Moore,* 845 S.W.2d 820, 823 (Tex.1993). Even without this statutory directive, Texas courts generally give weight to an administrative agency's interpretation of a statute as long as that interpretation is reasonable. *Id.; State v. Office of Pub. Util. Counsel,* 849 S.W.2d 864, 868–69 (Tex.App.—Austin), *judgment vacated sub nom., Office of Pub. Util. Counsel v. Public Util. Comm'n,* 866 S.W.2d 209 (Tex.1993). At trial, the Comptroller presented a series of tax policy statements from the last six years to support the consistency of its position that sales tax must be collected on the regulated provider's sale of access to the final consumer.

The Texas Administrative Code sets out tax exemptions for telecommunications services *purchased for the purpose of resale,* not on the resale itself. 34 Tex.Admin.Code § 3.344(c) (1993). This administrative rule clearly states that sales tax must be collected from the final consumer on the total charge for the provider's services and the original charge for access. Further, we note that rule 3.344 specifically makes Teleprofits' consumer sales taxable. Rule 3.344 states that sales tax is due on a "taxable service paid for by the insertion of coins or tokens into a coin-operated telephone." 34 Tex.Admin.Code § 3.344(b)(7) (1993).

In response, Teleprofits argues that the Comptroller's construction contradicts the plain language of the statute. Teleprofits insists that the Comptroller incorrectly interpreted the exemption to apply to "sales of access *to* regulated providers" when the statute discusses "sales of access *by* regulated providers." Teleprofits alternatively argues that the Comptroller and the trial court improperly construed the phrase *"sales* by regulated providers" to mean *"purchases* by regulated providers." Teleprofits argues that the statute plainly reads that all "sales of access by a regulated provider" are exempt. We disagree that the Comptroller's rules and policy statements contradict the statute's language.

■ Indeed, the Comptroller's interpretation is reasonable and consistent with the statute as written. The Comptroller interprets the phrase "by the regulated provider" to refer to "access" and not to "sales." Under the doctrine of the last antecedent, a qualifying phrase is said to modify the words or clause immediately preceding it and is not to be construed as extending to or including others more remote. *Stracener v. United Servs. Automobile Ass'n,* 777 S.W.2d 378, 383 (Tex.1989); *City of Corsicana v. Willmann,* 216 S.W.2d 175, 176 (Tex.1949); *Montanye v. Transamerica Ins. Co.,* 638 S.W.2d 518, 521 (Tex.App.—Houston [1st Dist.] 1982, no writ). The agency has appropriately interpreted the phrase "by the regulated provider" to modify the antecedent phrase immediately preceding it. We conclude that the statute as interpreted by the agency is reasonable and consistent with expressions of legislative intent and furthers the overriding legislative purpose.

### CONCLUSION

Having concluded that the district court did not err when it held that Teleprofits' receipts from pay telephone customers do not qualify for a tax exemption under section 151.323(2) of the Tax Code, we overrule Te-

leprofits' single point of error and affirm the judgment of the trial court.