

# ATTORNEY GENERAL OF TEXAS

## GREG ABBOTT

November 7, 2005

Shirley J. Neeley, Ed.D.
Commissioner of Education
Texas Education Agency
1701 North Congress Avenue
Austin, Texas 78701-1494

Opinion No. GA-0374

Re: Whether in light of House Bill 383 a school district employee may administer corporal punishment under a disciplinary policy adopted by the board of trustees (RQ-0369-GA)

Dear Commissioner Neeley:

You write to inquire about the "effect, if any, of the provisions of House Bill No. 383, as enacted by the 79th Legislature, Regular Session, on the ability of public schools to use corporal punishment."[1] In essence you ask for our opinion whether in light of House Bill 383 a school district employee may administer corporal punishment under a disciplinary policy adopted by the board of trustees.

It is long established in Texas that a teacher has a right to "inflict moderate corporal punishment for the purpose of restraining or correcting the refractory" student. *Dowlen v. State*, 14 Tex. Ct. App. 61, 1883 WL 8865, at *3 (1883); *see also Spacek v. Charles*, 928 S.W.2d 88, 95 (Tex. App.–Houston [14th Dist.] 1996, writ dism'd w.o.j.). You inform us "that the use of corporal punishment is a decision made by policies of the local school districts" and that "[n]o state agency has authority over local policies involving corporal punishment." Request Letter, *supra* note 1, at 1 (citing TEX. EDUC. CODE ANN. § 7.003) (Vernon 1996); *see* Tex. Att'y Gen. Op. No. JC-0491 (2002) at 2 ("Matters of student discipline under Texas law, are generally speaking, within the authority of local school boards."). You further inform us that the Texas Association of School Boards offers local school districts, each of which ultimately adopts its own policy, three model policies: "one with a prohibition against corporal punishment, one with corporal punishment allowed but conditioned upon parental permission, and one that allows school administrators to determine whether to use corporal punishment." *Id.* You inquire about House Bill 383 which added a new subsection to Family Code section 151.001 to provide:

> (e) Only the following persons may use corporal punishment for the reasonable discipline of a child:
>
> (1) a parent or grandparent of the child;

---

[1]Letter from Shirley J. Neeley, Ed.D., Commissioner of Education, Texas Education Agency, to Honorable Greg Abbott, Texas Attorney General, at 1 (July 27, 2005) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

(2)  a stepparent of the child who has the duty of control and
reasonable discipline of a child; and

(3)  an individual who is a guardian of the child and who has
the duty of control and reasonable discipline of the child.

Act of May 25, 2005, 79th Leg., R.S., ch. 924, § 1, 2005 Tex. Sess. Law Serv. 3165, 3165 (to be codified as an amendment of TEX. FAM. CODE ANN. § 151.001(e)).

You inform us that there are two other provisions relevant to corporal punishment in schools found in the Texas Education Code and the Texas Penal Code. Section 9.62, Texas Penal Code, a justification for the use of force entitled "Educator-Student," provides:

The use of force, but not deadly force, against a person is justified:

(1)  if the actor is entrusted with the care, supervision, or administration of the person for a special purpose; and

(2)  when and to the degree the actor reasonably believes the force is necessary to further the special purpose or to maintain discipline in a group.

TEX. PEN. CODE ANN. § 9.62 (Vernon 2003). Texas Education Code section 22.0512(a) provides that:

A professional employee of a school district may not be subject to disciplinary proceedings for the employee's use of physical force against a student to the extent justified under Section 9.62, Penal Code.

TEX. EDUC. CODE ANN. § 22.0512(a) (Vernon Supp. 2004-05). In addition, section 22.0512(c) recognizes school districts' authority to adopt and enforce corporal punishment policies and to discipline employees for violating them. *See id.* § 22.0512(c) ("This section does not prohibit a school district from: (1) enforcing a policy relating to corporal punishment; or (2) notwithstanding Subsection (a), bringing a disciplinary proceeding against a professional employee of the district who violates the district policy relating to corporal punishment."); *see also id.* §§ 37.001 (Vernon Supp. 2004-05), .102 (Vernon 1996). Though limiting its use, these provisions recognize a school district's independent authority to administer corporal punishment.

Considering the Penal Code and Education Code provisions, you pose the following three questions about new subsection 151.001(e) in the Texas Family Code:

1.  May an employee of a school district who is not related to a student in the manner described in Section 151.001(e), Family Code, utilize corporal punishment pursuant to a district student discipline policy adopted by the board of trustees?

    2. If your answer to question #1 is "yes," may a district adopt a policy authorizing corporal punishment when a parent or other individual named in Subsection 151.001(e), Family Code, has not given permission for corporal punishment?

    3. If your answer to question #2 is "no," may any individual listed in Subsection 151.001(e), Family Code, authorize corporal punishment despite objection by another individual?

Request Letter, *supra* note 1, at 3.

## I. Rules of Statutory Construction

The cardinal rule of statutory construction is to ascertain legislative intent. *See In re Canales*, 52 S.W.3d 698, 702 (Tex. 2001). To do so, courts first look to the statute's words, attempting to ascertain their plain and common meaning. *See* TEX. GOV'T CODE ANN. § 311.011(a)-(b) (Vernon 2005) (Code Construction Act); *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). Courts construe provisions in context, considering the statute as a whole. *See* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005) (words and phrases to be read in context); *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001) ("[W]e must always consider the statute as a whole rather than its isolated provisions. We should not give one provision a meaning out of harmony or inconsistent with other provisions, although it might be susceptible to such a construction standing alone."). Additionally, courts will consider the body of law existing at the time the statute was enacted. *See Brunson v. Woolsey*, 63 S.W.3d 583, 588 (Tex. App.–Fort Worth 2001, no pet.) ("We also construe the statute in the light of the entire body of law existing at the time of its enactment."); *accord City of Houston v. Woolley*, 51 S.W.3d 850, 853 (Tex. App.–Houston [1st Dist.] 2001, no pet.); *City of Ingleside v. Kneuper*, 768 S.W.2d 451, 454 (Tex. App.–Austin 1989, writ denied) ("In order to ascertain legislative intent, a statute will be construed in light of the entire body of law existing at the time of its enactment, including the common law."). Courts will "'not decide the scope of statutory language by a bloodless literalism in which text is viewed as if it had no context.'" *Korndorffer v. Baker*, 976 S.W.2d 696, 700 (Tex. App.–Houston [1st Dist.] 1997, writ dism'd w.o.j.) (citation omitted).

Regardless of whether a statute is considered ambiguous on its face, the Code Construction Act allows a reviewing court to consider, among other things, the object sought to be obtained, any legislative history, and the consequences of a particular statutory construction. *See* TEX. GOV'T CODE ANN. § 311.023 (Vernon 2005); *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 283 (Tex. 1999); *R.R. Comm'n of Tex. v. Mote Res.*, 645 S.W.2d 639, 643 (Tex. App.–Austin 1983, no writ) ("Nevertheless, in reading a statute, whether or not the statute is considered ambiguous on its face, a court may consider the circumstances under which the statute was enacted and the underlying legislative history of the enactment."). An ambiguous statute must be construed consistent with the legislative intent, which can be ascertained by looking beyond the terms of the statute. *See In re K.L.V.*, 109 S.W.3d 61, 65 (Tex. App.–Fort Worth 2003, pet. denied). "'Ambiguity exists when a statute is capable of being understood by reasonably well informed persons in two or more different

senses.'" *Teleprofits of Tex., Inc., v. Sharp*, 875 S.W.2d 748, 750 (Tex. App.–Austin 1994, no writ) (citation omitted).

Statutes should also be construed in harmony with other statutes unless a contrary intention is clearly manifest. Where two statutes seem to be inconsistent, a construction will be sought to harmonize them and leave both in concurrent operation, if it is possible fairly to reconcile them. *See Fortenberry v. State*, 283 S.W. 146, 148 (Tex. Comm'n App. 1926, judgm't adopted). Texas courts do not favor implied repeals. *See Standard v. Sadler*, 383 S.W.2d 391, 395 (Tex. 1964). Statutes are presumed to be enacted by the legislature with full knowledge of the existing state of the law and with reference to it. *See McBride v. Clayton*, 166 S.W.2d 125, 128 (Tex. 1942). When a new statute is passed dealing with a subject covered by an old law, if there is no express repeal, the presumption is that in enacting a new law the legislature intended the old statute to remain in operation. *See State v. Humble Oil and Refining Co.*, 187 S.W.2d 93, 100 (Tex. Civ. App.–Waco 1945, writ ref'd w.o.m.).

## II.    Analysis

Mindful of these rules of statutory construction, we consider House Bill 383. House Bill 383 amends section 151.001 of the Texas Family Code, which establishes parents' rights and duties. *See* TEX. FAM. CODE ANN. § 151.001(a)-(d) (Vernon Supp. 2004-05). As initially introduced, the language of House Bill 383 provided:

> (e)    A parent of a child or other person who has the duty of control and reasonable discipline of the child may use corporal punishment for the reasonable discipline of the child.

Tex. H.B. 383, 79th Leg., R.S. (2005) (introduced version). The language of House Bill 383 was subsequently amended to read:

> (e)    Only the following persons may use corporal punishment for the reasonable discipline of a child:
>
> (1)    a parent or grandparent of the child;
>
> (2)    a stepparent of the child who has the duty of control and reasonable discipline of the child; and
>
> (3)    an individual who is a guardian of the child and who has the duty of control and reasonable discipline of the child.[2]

Tex. H.B. 383, 79th Leg., R.S. (2005) (engrossed version). This is the version of the bill that was passed by the legislature and became effective.

---

[2]You do not ask and we do not opine on whether school district employees are included within the scope of section 151.001(e).

A.      **Construction of House Bill 383**

House Bill 383 uses the exclusive term "only."[3] If we consider House Bill 383's plain text in isolation, the new subsection (e) could be read as making the right to use corporal punishment exclusive to the listed persons, particularly when viewed in light of the fact that the language was amended during the legislative session to use the exclusive word "only." *See supra* at 4-5. The rules of statutory construction do not allow us to confine our analysis solely to the text of House Bill 383, however. Instead, we are directed to also consider the entire statute of which it is a part and the body of law existing at the time House Bill 383 was enacted. *See Brunson*, 63 S.W.3d at 588; *Woolley*, 51 S.W.3d at 853; *Kneuper*, 768 S.W.2d at 454.

House Bill 383 added a provision to section 151.001 of the Texas Family Code. Section 151.001 is entitled "Rights and Duties of Parents" and is part of the larger subtitle governing suits affecting the parent-child relationship. *See* TEX. FAM. CODE ANN. §§ 151.001-.005 (Vernon 2002 & Supp. 2004-05) (Title 5, Subtitle B, Texas Family Code). As suggested by its title, the provisions of section 151.001 that existed prior to House Bill 383 set forth various parental rights and duties. For instance, a parent is given the right of physical possession of the child and the right to direct the moral and religious training of the child. *See id.* § 151.001(a)(1) (Vernon Supp. 2004-05). A parent is also given the "duty of care, control, protection and reasonable discipline of the child" as well as the duty to support the child. *Id.* § 151.001(a)(2)-(3). Section 151.001(a)(6) grants the parent the right to consent to a child's marriage, enlistment in the armed forces, and medical and dental care and other surgical and health treatment. *See id.* § 151.001(a)(6). A parent is also given the right in section 151.001 to represent the child in legal actions and to make other legal decisions for the child, *see id.* § 151.001(a)(7), to inherit from and through the child, *see id.* § 151.001(a)(9), and to make decisions about the child's education. *See id.* § 151.001(a)(10). Section 151.001 provides that a parent failing to discharge the duty of support is liable to a person who provides necessaries to the child. *See id.* § 151.001(c). Finally, section 151.001 states that the rights and duties of a parent are subject to, among other things, "a court order affecting the rights and duties." *Id.* § 151.001(d)(1). It is in this context, notably not in the context of the Education Code, that House Bill 383 adds express authorization for parents and other listed persons to use corporal punishment.

At the time House Bill 383 was enacted, existing law outside the Family Code recognized a right of persons beyond those listed in House Bill 383 to use corporal punishment.[4] Common law recognized the right of teachers to administer corporal punishment. *See Dowlen*, 14 Tex. Ct. App. 61, 1883 WL 8865, at *3 (1883); *see also Spacek*, 928 S.W.2d at 95. The Texas Penal Code granted a defense in the form of a justification to parents, stepparents and those acting *in loco parentis* for

---

[3]The term "only" is defined as "and no one else or nothing more besides; solely and exclusively." THE NEW OXFORD AMERICAN DICTIONARY 1196 (2001). *See also* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005) (Code Construction Act).

[4]"Texas cases have long recognized the rule that public school teachers and others standing [i]n loco parentis may use reasonable force to discipline their charges." *Hogenson v. Williams*, 542 S.W.2d 456, 459 (Tex. Civ. App.–Texarkana 1976, no writ) (citing *Balding v. State*, 4 S.W. 579 (Tex. Ct. App. 1887) and *Prendergast v. Masterson*, 196 S.W. 246 (Tex. Civ. App.–Texarkana 1917, no writ)).

the use of nondeadly force against a child for the discipline of the child. *See* TEX. PEN. CODE ANN. § 9.61 (Vernon 2003).[5] A similar justification was available to educators, *see id.* § 9.62, and guardians. *See id.* § 9.63. Outside the Penal Code's criminal context, educators were granted immunity from school disciplinary proceedings for their use of physical force against a student for punishment to the extent such force was used as justified by section 9.62 of the Penal Code and within school district policy. *See* TEX. EDUC. CODE ANN. § 22.0512(a), (c) (Vernon Supp. 2004-05). House Bill 383 does not on its face purport to change the existing law. In the context of section 151.001 of the Family Code and existing law, House Bill 383 could be construed as leaving the existing law intact and merely recognizing the affirmative right of parents and the other persons listed in section 151.001(e) to use corporal punishment.

With competing constructions, House Bill 383 is "capable of being understood by reasonably well informed persons in two or more different senses" and is therefore ambiguous. *See Teleprofits of Tex., Inc.*, 875 S.W.2d at 750. Accordingly, we must look beyond the language of the statute for the intent of the legislature in enacting House Bill 383. *See In re K.L.V.*, 109 S.W.3d at 65. In attempting to ascertain the legislative intent behind a statute, we may consider, among other things, the object sought to be obtained, any legislative history, and the consequences of a particular construction. *See* TEX. GOV'T CODE ANN. § 311.023 (Vernon 2005); *see also Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex. 1994); Tex. Att'y Gen. Op. No. GA-0283 (2004) at 6.

The legislative history of House Bill 383 is informative. The bill analysis accompanying the original language of House Bill 383 states that:

> Currently, Texas law provides that a parent of a child has the right and a duty to care, control, protect, and reasonably discipline a child. However, when a parent disciplines a minor child with the use of corporal punishment, or "spanking," the parent may be confronted with confusion as to possible criminal charges that may arise from the use of such punishment.
>
> House Bill 383 provides that a parent or person having a duty to control and reasonably discipline a child may use corporal punishment for the reasonable discipline of a child.

HOUSE COMM. ON JUVENILE JUSTICE AND FAMILY ISSUES, BILL ANALYSIS, Tex. H.B. 383, 79th Leg., R.S. (2005). The House Committee on Juvenile Justice and Family Issues, not the House Committee on Public Education, held a public hearing and took testimony on the bill. Representative Harold V. Dutton, the bill's sponsor, stated that the bill "moves the language from the Penal Code . . . as a defense to child abuse . . . to the Family Code and the language is essentially that a parent has the right to use corporal punishment to reasonably discipline a child." *Hearing on Tex. H.B. 383 Before the House Comm. on Juvenile Justice and Family Issues*, 79th Leg., R.S. (Feb. 23, 2005) (Representative Dutton speaking). By his reference to movement from the Penal Code to the Family

---

[5]A "justification" is a "lawful or sufficient reason for one's acts or omissions." BLACK'S LAW DICTIONARY 870 (7th ed. 1999).

Code, Representative Dutton appears to be saying that the bill was intended to affirmatively recognize in the Family Code the right to parental use of corporal punishment that is distinguished from a defense to criminal child abuse charges under the Penal Code.[6] A witness testifying in support of the bill related to the committee a story about a parent who was subjected to a full Child Protective Services ("CPS") inquiry and parenting classes because the parent admitted to spanking the child. *See id.* (Lee Spiller statement). The witness testified that the injury that prompted the parent to be questioned was in fact caused by an allergy and not the spanking. *See id.* The other witness before the Juvenile Justice and Family Issues Committee encouraged the bill's passage because parents were afraid to discipline their children, and the witness attributed the lack of discipline to societal problems. *See id.* (Roy Getting statement). We believe these statements indicate that the wrong sought to be addressed by House Bill 383 was the confusion of parents about their right to spank their children and the need to discourage CPS involvement in reasonable parental corporal punishment discipline matters. *See Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex. 1998) ("[W]e bear in mind 'the old law, the evil and the remedy'" in ascertaining legislative intent (citing TEX. GOV'T CODE ANN. § 312.005)); *accord Calvert v. Kadane*, 427 S.W.2d 605, 608 (Tex. 1964); *Wilson v. Bloys*, 169 S.W.3d 364, 368 (Tex. App.–Austin 2005, pet. filed) ("In ascertaining legislative intent, we may consider the evil sought to be remedied . . . ."). Thus, we believe House Bill 383's purpose as introduced was to clarify confusion by affirmatively recognizing parents' right to use corporal punishment to reasonably discipline their children.

It is also apparent that House Bill 383's purpose did not change significantly after it was amended. The amendment to House Bill 383 with the language ultimately adopted was passed in April 2005. *See* H.J. OF TEX., 79th Leg., R.S. 1819 (2005). A month later, in May, the Senate Jurisprudence Committee, not the Senate Committee on Education, held a hearing on the bill. Senator Juan "Chuy" Hinojosa, the bill's Senate sponsor, stated that:

> Right now there is a lot of confusion as to what the law provides in terms of trying to discipline a child. Sometimes when a parent or grandparent tries to discipline a child [unintelligible] will call protective services. This eliminates the confusion by making it clear that only a parent, steparent or guardian may use corporal punishment for the reasonable discipline of a child.

*Hearing on Tex. H.B. 383 Before the Senate Comm. on Jurisprudence*, 79th Leg., R.S. (May 20, 2005) (Senator Hinojosa speaking). We believe Senator Hinojosa's statement acknowledges that House Bill 383, despite its amended language, was nonetheless still intended to address the problem of parental fear of CPS involvement in the parent's reasonable discipline of a child. We do not believe that his statement – "only a parent . . . may use corporal punishment" – negates the clear purpose behind House Bill 383. *Id.* Indeed, by using the exclusionary term "only" here, Senator Hinojosa could have been alluding to the fact that the express recognition of the corporal punishment

---

[6]Harold V. Dutton, Jr., *Corporal Punishment, so-called experts'* [sic] *and my bill*, Houston Chronicle, Feb. 24, 2005, ("You'll find that the corporal punishment provision is in the Penal Code as a defense to child abuse. As a defense to child abuse, that's what's offensive to most parents. House Bill 383 would simply move that provision to the Family Code. No more, no less.").

right was being given exclusively to those listed persons.[7] In light of the clear purpose of the bill to address parental fears of CPS involvement in reasonable child discipline issues, we do not believe this one statement justifies a conclusion that House Bill 383 as amended was designed to prohibit all other uses of corporal punishment.

As initially introduced, House Bill 383 was not intended to apply to a school's use of corporal punishment. *See* HOUSE RESEARCH ORGANIZATION, BILL ANALYSIS, Tex. H.B. 383, 79th Leg., R.S. (2005) ("The bill would not apply to the use of corporal punishment by teachers or other school personnel."). In the Statement of Legislative Intent on the House Floor accompanying his amendment to House Bill 383, Representative Dutton sought to make it clear that the amended bill did not change the law with respect to use of corporal punishment in schools:

> REPRESENTATIVE TALTON: Representative Dutton, let me make sure–when you put the amendment on, will that amendment prohibit teachers from using corporal punishment on the kids in public and private schools?
>
> REPRESENTATIVE DUTTON: I believe that the current law actually prohibits that. What this amendment does is simply make it a little bit more clearer that those people do not have standing in order to do that.
>
> TALTON: I thought, right now, that the law is whatever that school decides on their policy.
>
> DUTTON: I'm sorry. I couldn't understand you.
>
> TALTON: I think current law is that each school district decides their own policy regarding corporal punishment, isn't that what current law is?
>
> DUTTON: Well, but they have to have permission from the parent.
>
> TALTON: Right, and your bill would make it so that not even with permission from the parent, they will not be able to do that, is that correct?
>
> DUTTON: No, still it doesn't take that away.
>
> TALTON: Okay, let me make sure that I understand, so if the parents give permission to do corporal punishment in either a public or private school then they can still do that?

---

[7]Jeffrey Gilbert, *House Oks* [sic] *Corporal Punishment*, Houston Chronicle, Apr. 19, 2005 ("A few lawmakers raised questions over whether that list covered grandparents. . . . Because of the confusion, Dutton will add grandparent to the list . . . .").

DUTTON: Yes, under the amendment, that is correct.

TALTON: Okay.

Debate on Tex. H.B. 383 on the Floor of the House, 79th Leg., R.S. (Apr. 18, 2005); H.J. of Tex., 79th Leg., R.S. 1819 (2005) (Statement of Legislative Intent). Both men believed, contrary to existing law, that a school could administer corporal punishment only with parental consent. This exchange does not, however, indicate any intent to repeal existing law on corporal punishment. *See* *Gordon v. Lake*, 356 S.W.2d 138, 139 (Tex. 1962) ("Repeals by implication are not favored . . . ."). Additionally, in neither of the House or Senate committee hearings on House Bill 383 was corporal punishment's use in schools and by educators even addressed.[8]

Based on its legislative history, we believe House Bill 383 was designed to address the confusion and fears that parents may have had about their ability to discipline their child. *See* *Garrison Contractors, Inc.*, 966 S.W.2d at 484; *accord Kadane*, 427 S.W.2d at 608. House Bill 383 clarified the law by expressly recognizing the right of parents and the other listed persons to use corporal punishment without fear of CPS involvement.

In addition to examining legislative history, to determine legislative intent we may also consider the consequences of alternative constructions. *See In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371, 380 (Tex.1998). Where possible, we are to construe statutes in harmony and avoid implied repeals. *See Fortenberry*, 283 S.W. at 148; *Sadler*, 383 S.W.2d at 395. If House Bill 383 were construed as a prohibition against the use of corporal punishment in schools, it would conflict with aspects of section 9.62, Penal Code, and section 22.0512, Education Code, and render them partially meaningless. Section 9.62, Penal Code, provides a justification defense to educators for the use of physical force against a person if entrusted with responsibility over the person for a special purpose and the physical force is necessary to further the special purpose.[9] *See* TEX. PEN. CODE ANN. § 9.62 (Vernon 2003). Section 9.62 has been construed to authorize an educator to use reasonable force in two circumstances: "(1) to enforce compliance with a proper command issued for the purpose of controlling, training, or educating the child, or (2) to punish the child for prohibited conduct." Tex. Att'y Gen. Op. No. GA-0202 (2004) at 2 (quoting *Hogenson v. Williams*, 542 S.W.2d 456, 460 (Tex. Civ. App.–Texarkana 1976, no writ)). The second circumstance is the one that speaks to a school's use of corporal punishment. *See* Tex. Att'y Gen. Op. No. GA-0202 (2004) at 3 (defining corporal punishment). If House Bill 383 prohibits educators from administering corporal punishment, to the extent it justifies the use of force in the second

---

[8]Abolishing the use of corporal punishment in schools was considered by the same legislature that passed House Bill 383. House Bill 2413 would have amended the Education Code to provide that "[a] school district employee or volunteer or independent contractor of a district may not administer corporal punishment or cause corporal punishment to be administered to a student." Tex. H.B. 2413, 79th Leg., R.S. (2005). Evidently, the legislature knew how to draft legislation that would have prohibited corporal punishment in schools. However, House Bill 2413 was left pending in committee and was not enacted.

[9]In the case of an educator, the "special purpose is 'that of controlling, training, and educating'" students. Tex. Att'y Gen. Op. No. GA-0202 (2004) at 2 (quoting *Hogenson v. Williams*, 542 S.W.2d 456, 459-60 (Tex. Civ. App.–Texarkana 1976, no writ)).

circumstance – to punish a child for prohibited conduct – the justification defense would not be legally effective.[10]

Similarly, with respect to corporal punishment, Education Code section 22.0512 provides educators immunity from school disciplinary proceedings for the "use of physical force against a child to the extent justified under Section 9.62, Penal Code" and as authorized by school district policy. TEX. EDUC. CODE ANN. § 22.0512(a), (c) (Vernon Supp. 2004-05). Because it is construed to have the same scope as section 9.62, Penal Code, *see* Tex. Att'y Gen. Op. No. GA-0202 (2004) at 4, section 22.0512, Education Code, would also be rendered meaningless to the same extent as would section 9.62 of the Penal Code. Were House Bill 383 to be construed as prohibiting an educator's use of corporal punishment, the conflict between it and the corporal punishment aspect of section 9.62, Penal Code, and section 22.0512, Education Code, would be irreconcilable. If House Bill 383 prohibited corporal punishment in schools but an educator were allowed to successfully use the Penal Code provision or the Education Code provision against charges of corporal punishment, the defense would negate the prohibition. We do not believe the legislature intended this result. Statutes are to be construed in harmony where possible. *See Needham*, 82 S.W.3d at 318. Construing House Bill 383 to recognize an express right of corporal punishment in certain listed individuals and not as a prohibition against the use of corporal punishment for schools harmonizes it with the Penal Code and Education Code provisions so that all three provisions can be given full effect. Moreover, harmonizing the three statutes avoids an implied repeal of aspects of the existing Penal Code and Education Code. *See Sadler*, 383 S.W.2d at 395.

For all of these reasons, we conclude that House Bill 383, or section 151.001(e), Family Code, does not change Texas law with respect to a school district's use of corporal punishment.

## B. Specific Questions

### 1. *School District's Use of Corporal Punishment*

Your first question is whether an employee of a school district who is not a person listed in section 151.001(e) may "utilize corporal punishment pursuant to a district student discipline policy." Request Letter, *supra* note 1, at 3. Because we construe House Bill 383 to recognize an affirmative right in certain persons to use corporal punishment and not to prohibit a school's use of corporal punishment, we conclude that a school district employee may utilize corporal punishment to the extent permitted by section 9.62, Penal Code, section 22.0512, Education Code, and any school district policy.

### 2. *School District's Use of Corporal Punishment without Parental Consent*

Your second question, contingent on an affirmative answer to your first, is whether a district "may adopt a policy authorizing corporal punishment when a parent or other

_____

[10]Corporal punishment has been defined to mean "the infliction of bodily pain as a penalty for disapproved behavior." Tex. Att'y Gen. Op. No. GA-0202 (2004) at 3.

individual named in Subsection 151.001(e), Family Code, has not given permission for corporal punishment." Request Letter, *supra* note 1, at 3.

In Texas, a teacher has long had the right to "inflict moderate corporal punishment for the purpose of restraining or correcting the refractory" student.[11] *Dowlen*, 14 Tex. Ct. App. 61, 1883 WL 8865, at *3 (1883); *Spear v. State*, 25 S.W. 125, 125 (Tex. Crim. App. 1894); *see also Spacek*, 928 S.W.2d at 95 ("Section 9.62 [Penal Code] is generally expressive of the common law majority rule that public school teachers standing *in loco parentis* may use reasonable force to discipline their charges."). Prior to the enactment of House Bill 383, Texas law permitted a school district to utilize corporal punishment for the reasonable discipline of its students without permission or consent of parents. *See Ware v. Estes*, 328 F. Supp. 657, 658-60 (N.D. Tex. 1971) (affirming district court's dismissal of plaintiffs' lawsuit challenging Dallas Independent School District's use of corporal punishment without parental consent). Because we have concluded that House Bill 383 was not intended to abrogate existing law on corporal punishment in schools, we conclude here that a school district may adopt a policy authorizing corporal punishment without the permission of those persons listed in section 151.001(e).

      3.    *School District's Use of Corporal Punishment over Objection of Certain Persons*

Because your third question is contingent upon an affirmative answer to your second question, we do not address it.

## III.   Conclusion

In sum, House Bill 383 recognizes an express right in certain persons to use corporal punishment in the reasonable discipline of a child. It does not prohibit the use of corporal punishment by school districts. Therefore, a professional school district employee may utilize corporal punishment to the extent permitted by other state law and school district policies. Additionally, a school district may adopt a policy authorizing corporal punishment without the permission of the persons listed in section 151.001(e), Family Code.

---

[11]Moreover, federal constitutional concerns are not implicated by a school policy authorizing reasonable corporal punishment. Reasonable corporal punishment does not constitute cruel and unusual punishment under the Eighth Amendment. *See Ingraham v. Wright*, 525 F.2d 909, 914 (5th Cir. 1976) ("We concur with the approach taken by the two district courts that have held the Eighth Amendment to be inapplicable to corporal punishment in public schools."); *Woodard v. Los Fresnos Indep. Sch. Dist.*, 732 F.2d 1243, 1245 (5th Cir. 1984). Similarly, where a "state affords adequate post-punishment remedies to deter unjustified or excessive punishment and to redress that which may nevertheless occur," a student's Fourteenth Amendment procedural due process rights are protected. *See Los Fresnos Indep. Sch. Dist.*, 732 F.2d at 1245 (citing *Ingraham v. Wright*, 430 U.S. 651, 675-80 (1977) (considering procedural due process charges brought under the Fourteenth Amendment)). A student's Fourteenth Amendment substantive due process rights are also not implicated by reasonable corporal punishment so long as the corporal punishment has a "real and substantial relation to the object sought to be attained." *Ingraham*, 525 F.2d at 916-17. And the Fifth Circuit has said that "[p]addling of recalcitrant children has long been an accepted method of promoting good behavior and instilling notions of responsibility and decorum into the mischievous heads of school children." *Id.* at 917.

### S U M M A R Y

Section 151.001(e), Family Code, added by House Bill 383 in the Seventy-ninth Legislature, recognizes an affirmative right in the persons listed in the legislation to use reasonable corporal punishment to discipline a child. Section 151.001(e) is not a prohibition against the reasonable use of corporal punishment in schools.

Accordingly, a professional employee of a school district may administer corporal punishment to the extent permitted by section 9.62, Penal Code, section 22.0512, Education Code, and any school district policy. Moreover, a school district may adopt a policy authorizing corporal punishment without the permission of those persons listed in section 151.001(e).

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

NANCY S. FULLER
Chair, Opinion Committee

Charlotte M. Harper
Assistant Attorney General, Opinion Committee