Opinion issued November 23, 2005



     











In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00305-CV




WACHOVIA SECURITIES, LLC & RODERICK CHISHOLM, Appellants

V.

ROCKY EMERY, Appellee




On Appeal from the 165th District Court
Harris County, Texas
Trial Court Cause No. 2004-64094




* * *
__________

NO. 01–05–00448–CV
___________

IN RE WACHOVIA SECURITIES, LLC AND RODERICK CHISHOLM,
RELATORS




Original Proceeding on Petition for Writ of Mandamus




O P I N I O N

          In dual proceedings, appellants/relators, Wachovia Securities, LLC and
Roderick Chisholm (“relators”), challenge the trial court’s order that denied their
motion to compel arbitration against appellee/real party in interest, Rocky Emery
(“Emery”).


 In one issue, relators contend that the trial court erroneously denied their
motion to compel arbitration. We dismiss the interlocutory appeal for want of
jurisdiction and conditionally grant the petition for writ of mandamus.
Background
          Rocky Emery began his career in the securities industry as a registered
representative of PaineWebber in 1993. Before starting his employment with
PaineWebber, Emery was required to execute a Uniform Application for Securities
Industry Registration or Transfer (“U-4”) which contained an arbitration provision. 
On July 13, 2001, Emery resigned from PaineWebber and began working for First
Union, Wachovia’s predecessor.


 Emery then signed a second U-4 which contained
essentially the same arbitration provision. Pursuant to the arbitration provisions,
Emery agreed “to arbitrate any dispute, claim or controversy that may arise between
me and my firm, or a customer, or any other person, that is required to be arbitrated
under the rules, constitutions or by-laws of the SROs


 indicated in Item 11 [i.e., the
National Association of Securities Dealers (NASD) and the New York Stock
Exchange (NYSE)] as may be amended from time to time.” 
          After Wachovia terminated Emery’s employment on September 21, 2004,
Emery filed a breach-of-contract claim against Wachovia and a negligent
misrepresentation claim against Chisholm, his branch manager at Wachovia. A little
over a week later, relators filed a motion to compel arbitration. On January 10, 2005,
Emery amended his petition by dropping the breach-of-contract claim and adding a
fraud and negligent misrepresentation claim against Wachovia and Chisholm and a
statutory libel and business-disparagement claim against Chisholm. 
          In his amended petition, Emery alleged that the defendants had made “false,
material misrepresentations” to induce him to leave his prior employment at
PaineWebber and join Wachovia. Specifically, Emery claimed that he had been
promised a computer platform for a Stock Option Financing (SOF) business he had
developed while at PaineWebber in order to induce him to leave PaineWebber and
bring other employees in the SOF group with him to Wachovia, but that Wachovia
had not kept its promises to get the SOF Platform up and running. Emery further
alleged that Chisholm had misrepresented to the NYSE and NASD in 2003 that
Emery had engaged in unauthorized business activities while employed by Wachovia,
that Wachovia was investigating these activities, and that Emery had been terminated
by Wachovia. Emery also filed a response to the motion to compel arbitration in
which he argued that the agreement to arbitrate did not apply to his claims because
his claims were based on conduct that occurred before he signed the second U-4. 
          Following a hearing, the trial court denied relators’ motion to compel. Relators
now challenge the trial court’s order via an interlocutory appeal and a petition for writ
of mandamus.
Appeal
          The Texas Arbitration Act (“TAA”) and the Federal Arbitration Act (“FAA”)
provide alternative procedural vehicles for relief. In re Educ. Mgmt. Corp., Inc., 14
S.W.3d 418, 425 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding). If the
trial court denies arbitration based on the TAA, the order is subject to interlocutory
appeal. Tex. Civ. Prac. & Rem. Code Ann. § 171.098(a)(1) (Vernon 2005). Relief
from a denial of arbitration under the FAA, however, must be pursued by mandamus. 
EZ Pawn Corp. v. Mancias, 934 S.W.2d 87, 91 (Tex. 1996).
          The trial court did not expressly determine whether the FAA or the TAA
applies. See 9 U.S.C. §§ 1-16 (2000); Tex. Civ. Prac. & Rem. Code Ann. §§
171.001-.098 (Vernon 2005). In addition, the U-4 does not state whether arbitration
is governed by the FAA or the TAA. As a threshold matter, we first determine which
act applies.
          The FAA governs a written arbitration clause in any contract “evidencing a
transaction involving commerce . . . .” See 9 U.S.C. § 2. This provision extends to
all transactions affecting commerce and is coextensive with the reach of the
Commerce Clause of the United States Constitution. Allied-Bruce Terminix Co. v.
Dobson, 513 U.S. 265, 271–81, 115 S. Ct. 834, 838–43 (1995); see In re L & L
Kempwood Assocs., 9 S.W.3d 125, 127 (Tex. 1999). A contract “evidenc[es] a
transaction involving commerce” if it in fact turns out to involve interstate commerce. 
Allied-Bruce, 513 U.S. at 277–81, 115 S. Ct. at 841–43.
          The FAA displaces state law only to the extent the state law conflicts with the
FAA’s purpose of enforcing the parties’ contractual obligation to arbitrate. Volt Info.
Sciences, Inc. v. Bd. of Trustees, 489 U.S. 468, 477–78, 109 S. Ct. 1248, 1255 (1989);
In re H.E. Butt Grocery Co., 17 S.W.3d 360, 378 (Tex. App.—Houston [14th Dist.]
2000, orig. proceeding). Thus, if the arbitration clause is enforceable under the FAA,
an analysis of enforceability under the TAA is unnecessary. See In re Anaheim
Angels Baseball Club, Inc., 993 S.W.2d 875, 877 n.1 (Tex. App.—El Paso 1999, orig.
proceeding [mand. denied]). 
          The sale of securities has been held to involve interstate commerce. See
Eurocapital Group, Ltd. v. Goldman Sachs & Co., 17 S.W.3d 426, 430 (Tex.
App.—Houston [1st Dist.] 2000, no pet.) (recognizing that account agreement
concerning sale of securities involved interstate commerce); Thomas James Assocs.,
Inc. v. Owens, 1 S.W.3d 315, 319 (Tex. App.—Dallas 1999, no pet.) (same); see also
Williams v. Cigna Fin. Advisors, Inc., 56 F.3d 656, 659 (5th Cir. 1995) (reasoning
that U-4 registration involved interstate commerce because it was contract involving
sale of securities).
          The underlying proceedings in this case involve an employment dispute in the
securities industry which is partially governed by an arbitration agreement in a U-4. 
Cases that involve U-4 arbitration agreements are consistently construed as affecting
interstate commerce. See In re Merrill Lynch, Pierce, Fenner & Smith Inc., 131
S.W.3d 709, 712 (Tex. App.—Dallas 2004, orig. proceeding); In re Scott, 100 S.W.3d
575, 579 (Tex. App.—Fort Worth 2003, orig. proceeding); Williams, 56 F.3d at 659
(reasoning that U-4 registration involves interstate commerce because it is contract
involving sale of securities); see also BWI Cos. v. Beck, 910 S.W.2d 620, 622–23
(Tex. App.—Austin 1995, orig. proceeding [leave denied]) (arbitration agreement
between employer and employee involved interstate commerce, even though
employee worked and made deliveries only in Texas, because employer had facilities
in Texas and other states). Thus, we conclude that the transaction between Emery and
the relators affected interstate commerce and that the FAA applies.
          Because the FAA applies, mandamus, and not interlocutory appeal, is the
procedural vehicle for the relief that relators request. Accordingly, we dismiss the
relators’ interlocutory appeal and consider the merits of the petition for writ of
mandamus.
                                                         Mandamus
          Standard of Review
          Mandamus is an extraordinary remedy that will issue only to correct a clear
abuse of discretion or the violation of a legal duty when there is no adequate appellate
remedy at law. In re Masonite Corp., 997 S.W.2d 194, 197 (Tex. 1999). When a trial
court erroneously grants a party’s motion to compel arbitration, the movant has no
adequate remedy at law and is entitled to a writ of mandamus. See In re Am.
Homestar, Inc., 50 S.W.3d 480, 483 (Tex. 2001). We review the trial court’s order
for abuse of discretion. Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 271 (Tex.
1992); Trico Marine Servs., Inc. v. Stewart & Stevenson Technical Servs., Inc., 73
S.W.3d 545, 548 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (combined appeal
& orig. proceeding). A trial court abuses its discretion when it errs in determining
what the law is or in applying the law to the facts. In re Bruce Terminix Co., 988
S.W.2d 702, 703 (Tex. 1998); Trico Marine Servs., 73 S.W.3d at 548. The trial
court’s order does not state its grounds for denying the relators’ motion to compel
arbitration. Thus, we review the grounds stated in the relators’ motion and reverse
the trial court’s order if any of the grounds are meritorious. See In re H.E. Butt
Grocery, 17 S.W.3d at 367.
          Enforceability of 2001 Agreement to Arbitrate
          In their mandamus petition, relators argue that the trial court erred in denying
their motion to compel arbitration because they submitted an agreement to arbitrate
and Emery’s claims were within the scope of the agreement.
          Whether an enforceable agreement to arbitrate exists is a legal question subject
to de novo review. In re Kellogg Brown & Root, 80 S.W.3d 611, 615 (Tex.
App.—Houston [1st Dist.] 2002, orig. proceeding). Although an arbitration
agreement does not have to assume any particular form, the language of the
agreement must clearly indicate the intent to arbitrate. See Massey v. Galvan, 822
S.W.2d 309, 316 (Tex. App.—Houston [14th Dist.] 1992, writ denied). Without an
agreement to arbitrate, arbitration cannot be compelled. Freis v. Canales, 877 S.W.2d
283, 284 (Tex. 1994) (orig. proceeding). In deciding whether to compel arbitration,
the trial court is entitled to rely on affidavits, pleadings, discovery, and stipulations. 
Jack B. Anglin, 842 S.W.2d at 269.
          Under both the TAA and the FAA, a party seeking to compel arbitration has
the initial burden to establish the arbitration agreement’s existence and to show that
the claims asserted fall within the agreement’s scope. See Tex. Civ. Prac. & Rem.
Code Ann. § 171.021(a) (Vernon 2005); In re Kellogg Brown & Root, 80 S.W.3d at
615. If the party seeking arbitration carries its initial burden, the burden then shifts
to the party resisting arbitration to present evidence on its defenses to the arbitration
agreement. See In re Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 573 (Tex.
1999); Mohamed v. Auto Nation USA Corp., 89 S.W.3d 830, 835 (Tex.
App.—Houston [1st Dist.] 2002, orig. proceeding). 
          To support their motion to compel arbitration, relators relied on the arbitration
clause found within the 2001 U-4 that Emery signed. The U-4 provides,
5. I agree to arbitrate any dispute, claim or controversy that may
arise between me and my firm, or a customer, or any other person,
that is required to be arbitrated under the rules, constitutions, or
by-laws of the SROs indicated in Item 11 as may be amended
from time to time and that any arbitration award rendered against
me may be entered as a judgment in any court of competent
jurisdiction.

Emery neither disputes that this clause mandates arbitration, nor disputes that he is
a signatory to this clause. We conclude that relators presented a valid arbitration
agreement. Thus, we turn to whether Emery’s claims fall within the scope of the
arbitration agreement.
          Scope of 2001 Arbitration Agreement
          Both federal and state law strongly favor arbitration. Cantella & Co., Inc. v.
Goodwin, 924 S.W.2d 943, 944 (Tex. 1996) (orig. proceeding); Prudential Sec. Inc.
v. Marshall, 909 S.W.2d 896, 898 (Tex. 1995) (orig. proceeding). Under the FAA,
any doubts as to whether a plaintiff’s claims fall within the scope of the arbitration
agreement must be resolved in favor of arbitration. Cantella, 924 S.W.2d at 944;
Prudential Sec., 909 S.W.2d at 899. “[A] court should not deny arbitration ‘unless
it can be said with positive assurance that an arbitration clause is not susceptible of
an interpretation which would cover the dispute at issue.’” Prudential Sec., 909
S.W.2d at 899 (quoting Neal v. Hardee’s Food Sys., Inc., 918 F.2d 34, 37 (5th Cir.
1990)). In determining whether a claim falls within the scope of an arbitration clause,
we must focus on the factual allegations of the complaint, rather than the legal causes
of action asserted. Id. at 900; AutoNation USA Corp. v. Leroy, 105 S.W.3d 190, 195
(Tex. App.—Houston [14th Dist.] 2003, orig. proceeding).
          The arbitration clause in the 2001 U-4 requires that Emery arbitrate “any
dispute, claim or controversy that may arise between me and my firm . . . or any other
person, that is required to be arbitrated under the rules” of the NYSE or NASD.
Emery argues (1) that his claims against Wachovia arose before he signed the July 13,
2001 arbitration agreement and are therefore outside its scope and (2) that claims by
a registered representative, like himself, against another registered representative, like
Chisholm, are not arbitrable under NASD or NYSE rules of arbitration.
Accrual of Emery’s Claims
          Emery first argues that his pre-July 13, 2001 conduct is not arbitrable. To
support his contention, he relies on Hendrick v. Brown & Root, Inc. 50 F. Supp. 2d
527 (E.D. Va. 1999). Hendrick worked for Brown & Root at four different time
periods. Id. at 528. In his third period of employment, October 19, 1988 through
May 20, 1993, and before he was terminated on May 20, 1993, Brown & Root
notified Hendrick that a dispute resolution plan would take effect on June 15, 1993. 
Id. at 529. After his fourth period of employment had ended, Hendrick discovered
that Brown & Root had used his name unlawfully during his third period of
employment, and he filed suit. Id. at 530. Brown & Root moved for arbitration,
claiming that Hendrick’s cause of action was subject to arbitration pursuant to his
employment contract during his fourth period of employment, which contained the
dispute resolution plan. Id. at 531. The court of appeals stated that the threshold
issue was whether the fourth contract and the incorporated dispute resolution plan
evinced an intent to arbitrate an employee’s claims that had accrued before execution
of the fourth contract. Id. at 533. The court found that at the time of the accrual of
Hendrick’s cause of action the employment contract contained no agreement to
arbitrate. Id. at 533–34.
          The facts of this case are entirely different. Unlike Hendrick, Emery had an
arbitration agreement with Wachovia throughout the time of his employment there.
The plain language of the agreement requires Emery to arbitrate “any dispute, claim
or controversy that may arise between me and my firm . . . or any other person, that
is required to be arbitrated under the rules” of the NYSE or NASD. (Emphasis
added.) Emery’s petition alleges claims arising out of a controversy between himself
as an employee of Wachovia and his employer and branch manager. There is no time
limit in the arbitration clause as to when the claims must have accrued. Thus,
Emery’s claims, by their terms, fall within the scope of his July 13, 2001 arbitration
agreement with Wachovia.
          We also observe that none of Emery’s claims accrued until after he was
employed by Wachovia and had signed the arbitration agreement. Emery’s claims
arise out of Wachovia’s alleged failure to keep promises made to induce him to leave
PaineWebber and out of Chisholm’s and Wachovia’s alleged misrepresentations to
the NYSE, NASD, and SEC relative to Emery’s outside business activities during his
employment at Wachovia and his termination by Wachovia. Emery does not allege
any injury prior to Wachovia’s alleged failure to carry through on its promises to
provide him an SOF Platform while he was employed by Wachovia. Accordingly,
Hendrick does not apply to the case at bar. 
          We conclude that Emery’s claims fall squarely within the scope of the July 13,
2001 U-4s arbitration clause, assuming that those claims are indeed arbitrable under
the rules of the NASD or NYSE. See Prudential Sec., 909 S.W.2d at 900;
AutoNation, 105 S.W.3d at 195.
 
Arbitrability of Claims Among Associated Persons
          Emery also argues that his claims against Chisholm are not subject to
arbitration under NASD or NYSE rules. The arbitration agreement in the U-4
incorporates by reference the rules of the SROs referred to in Item 11 of the U-4. 
Item 11 of the U-4 indicates that Emery is registered with the NASD and the NYSE. 
The rules of these two organizations govern which disputes must be resolved by
arbitration. See Metropolitan Life Ins. Co. v. Lindsay, 920 S.W.2d 720, 722 (Tex.
App.—Houston [1st Dist.] 1996, no writ); Smith Barney Shearson, Inc. v. Finstad,
888 S.W.2d 111, 115 (Tex. App.—Houston [1st Dist.] 1994, no writ).
          The NASD Code of Arbitration Procedure provides in relevant part: 
                    10101 Matters Eligible for Submission
This Code of Arbitration Procedure is prescribed and adopted . . .
for the arbitration of any dispute, claim, or controversy arising out
of or in connection with the business of any member of the
Association, or arising out of the employment or termination of
employment of associated person(s) with any member, with the
exception of disputes involving the insurance business of any
member which is also an insurance company;
 
                              (a)     between or among members;
                              (b)     between or among members and associated persons;
                              (c)     between or among members or associated persons and
public customers, or others; and
 
                              (d)     between or among members, registered clearing agencies
with which the Association has entered into an agreement
to utilize the Association’s arbitration facilities and
procedures, and participants, pledgees, or other persons
using the facilities of a registered clearing agency, as these
terms are defined under the rules of such a registered
clearing agency.

                    10201 Required Submission
                    (a)     Except as provided in paragraph (b) or Rule 10216,
a dispute, claim, or controversy eligible for
submission under the Rule 10100 Series between or
among members and/or associated persons, and/or
certain others, arising in connection with the
business of such member(s) or in connection with
the activities of such associated persons(s), or
arising out of the employment or termination of
employment of such associated person(s) with such
member, shall be arbitrated under this Code, at the
instance of:
 
                                         (1)     a member against another member; 
                              (2)     a member against a person associated with a
member or a person associated with a member
against a member; and
 
                              (3)     a person associated with a member against a
person associated with a member.

It is undisputed that Wachovia is a member of the NASD and that, as registered
representatives of a member firm, Emery and Chisholm are both persons “associated
with a member.” 
          Wachovia argues that the plain language of Rule 10101(b) provides for
arbitration between Emery, an associated person, and Chisholm, another associated
person. Emery argues that the arbitration agreement does not cover disputes solely
between associated persons. We agree with Wachovia.
          Emery relies on Wojcik v. Aetna Life Ins. and Annuities Co., 916 F. Supp. 729,
733 (N.D. Ill. 1996). In Wojcik, the federal district court held that a prior version of
the NASD rules did not encompass disputes solely between associated persons. 916
F. Supp. at 733. The current version plainly does encompass such disputes. See
NASD Code of Arb. Proc. 10201(a)(3); see also In re Scott, 100 S.W.3d 575,
579–82 (Tex. App.—Fort Worth 2003, orig. proceeding) (compelling arbitration of
claims by one associated person against another pursuant to NASD rules 10101 and
10201); Williams v. Imhoff, 203 F.3d 758, 764–65 (10th Cir. 2000) (holding that
plaintiffs’ claims were subject to arbitration because plaintiffs were associated
persons and that defendants, as trustees of member’s stock plan, were either
associated persons or “others” under rule 10101(c)); Singer v. Gaines, 896 So. 2d
851, 853–54 (Fla. Dist. Ct. App. 2005) (holding that NASD rules contemplate
arbitration among associated persons).
          Once a party seeking to compel arbitration establishes that an agreement exists
under the FAA and that the claims raised are within the agreement’s scope, the trial
court “has no discretion but to compel arbitration and stay its proceedings pending
arbitration.” Cantella, 924 S.W.2d at 944. Accordingly, the trial court erred by
denying relators’ motion to compel arbitration pursuant to the FAA. 
 
Conclusion
          We conclude that the trial court improperly denied relators’ motion to compel
arbitration. A party who is erroneously denied the right to arbitrate under the FAA
has no adequate remedy at law, and mandamus relief is appropriate. Id. at 945. Thus,
we conditionally grant the writ of mandamus in cause no. 01–05–00448–CV and
direct the trial court to order that relators’ claims proceed to arbitration under the
FAA. We dismiss the appeal in cause no. 01–05–00305–CV for want of jurisdiction.
 

                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Taft, Keyes, and Hanks.